26 C.C.P.A. (Patents)

## KELLY LIQUOR CO. v. NATIONAL BROKERAGE CO., Inc.
### Patent Appeal No. 4094.

Court of Customs and Patent Appeals.
April 10, 1939.

Lee L. Townshend, of Washington, D. C. (George H. Braddock, of Minneapolis, Minn., of counsel), for appellant.

Herbert J. Jacobi, of Washington, D. C. (George C. Baldt, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is a trade-mark interference proceeding wherein the Commissioner of Patents found priority of use of the involved mark by appellee and adjudged that it was entitled to registration of the mark for which it applied, reversing the decision of the Examiner of Interferences which adjudged that appellant was entitled to registration of its mark and that appellee was not entitled to registration of the mark for which it had made application.

The interference arises between an application filed by National Brokerage Company, Inc., on October 9, 1933, for registration of the mark "Camp Nelson" for use upon whiskey, and an application of appellant filed on December 23, 1935, for registration of the same mark for use upon whiskey. Both applications were filed under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq.

It appears that on January 22, 1937, Philip Blum & Company, Inc., was substituted as senior party herein as the assignee of record of the National Brokerage Company, Inc.

Appellant in its application alleged use of said mark by it and its predecessors for whiskey since on or about May 15, 1913. Appellee's assignor alleged use of its mark for whiskey since October 27, 1932.

It will be observed that the marks of the parties and the goods upon which they are used are identical.

It appears that, prior to the declaration of the interference before us, an interference (No. 2325) had been declared between appellee's assignor and Kelly Brothers Company involving the same trade-mark that is here involved. The testimony taken in that interference was incorporated in the record before us on motion of appellant, and the decision of the Examiner of Interferences in said interference is also a part of the record herein.

It appears from the decision of the Examiner of Interferences in said interference No. 2325 that the same was dissolved for the reason that it appeared from the testimony therein that Kelly Brothers Company was not actually using its mark in trade at the time of filing its application and had not been using it for a number of years prior thereto.

It further appears from the record before us that appellant was incorporated in February, 1934, and its first use of the trade-mark in issue was in October of that year, or about twelve months subsequent to the filing date of appellee's assignor. For earlier use appellant relies upon use of the mark by its alleged predecessors in interest. It further appears from the testimony on behalf of appellant that from January 1, 1906, until June 30, 1919, when prohibition went into effect, the Kelly-Steinmetz Liquor Co., of which one Patrick J. Kelly was president, was actively engaged in the wholesale liquor business in Minneapolis, Minn.; that in 1917 P. J. Bowlin & Son were engaged in the liquor business and had used the trade-mark "Camp Nelson" upon whiskey since 1913; that in 1917 said P. J. Bowlin & Son sold to Kelly-Steinmetz Liquor Company its business and good will, and in connection therewith the trade-mark "Camp Nelson"; that after the ad-

vent of prohibition in 1919 the Kelly-Steinmetz Liquor Company did no business except to make one sale in 1924 of about 500 cases of liquor bearing the trade-mark "Camp Nelson" to the Minneapolis Drug Company; that in January, 1920, the name of the Kelly-Steinmetz Liquor Company was changed by amendment of its articles of incorporation to the Kelly Brothers Company. Appellant introduced in evidence a document, Exhibit F, bearing date May 26, 1930, the material part of which reads as follows:

"Assignment of Trade Mark Camp
Nelson for Whiskey

"Whereas P. J. Bowlin & Son, of St. Paul, Minnesota, a corporation of Minnesota, did, on or about May 15, 1913, adopt and use trade mark Camp Nelson for Whiskey, and did uninterruptedly sell Whiskey in bottles and/or packages with the trade mark Camp Nelson applied thereto, in interstate commerce until on or about December 31, 1917;

"And whereas on or about December 31, 1917, said P. J. Bowlin & Son did sell said trade mark Camp Nelson for Whiskey and the good will of the business in connection with which said trade mark was used to The Kelly-Steinmetz Liquor Company, of Minneapolis, Minnesota, a corporation of Minnesota;

"And whereas said The Kelly-Steinmetz Liquor Company did uninterruptedly sell Whiskey in bottles and/or packages with the trade mark Camp Nelson applied thereto, in interstate commerce until restrained and restricted so to do by National Prohibition;

"And whereas the name of said The Kelly-Steinmetz Liquor Company was on January 10, 1920, changed to Kelly Brothers Company;

"And whereas (Kelly Liquor Company, of Minneapolis, Minnesota, a corporation of Minnesota, did on or about September 1, 1934, succeed to the possession of said trade mark Camp Nelson for Whiskey and the good will of the business in connection with which said trade mark was and is used, by assignment from said Kelly Brothers Company;)

"Now, Therefore, This Instrument Witnesseth:

"That said Kelly Liquor Company is now, and has been since on or about September 1, 1934, the sole and exclusive owner of trade mark Camp Nelson for Whis-

key, and the good will of the Whiskey business in connection with which said trade mark Camp Nelson is used; it being (the intention herein to acknowledge assignment by Kelly Brothers Company to Kelly Liquor Company, on or about September 1, 1934, of the trade mark Camp Nelson for Whiskey and the good will of the business in connection with which said trade mark was and is used, and to by this instrument formally assign, under date September 1, 1934, said trade mark Camp Nelson for Whiskey and the good will of the business in connection with which said trade mark is used to said Kelly Liquor Company.)

"Signed at Minneapolis, Minnesota, this 26th day of May, 1936.

"Kelly Brothers Company,
"By Patrick J. Kelly
"President."

Mr. Kelly testified that he was president and general manager of the Kelly-Steinmetz Liquor Company, later the Kelly Brothers Company, and Kelly Liquor Company, and owned virtually all of the stock of both companies.

Mr. Kelly's testimony in the instant interference was taken on June 13, 1936, about three weeks after the date of the assignment above quoted. He testified in part as follows:

"Q. 34. What is the business of the Kelly Brothers Company now? A. They have no particular business—they own real estate, stocks, bonds.

"Q. 35. Let me interrupt you. Are they in the liquor business? A. No.

"Q. 36. How long have they been out of the liquor business? A. I don't know just what you mean by that.

"Q. 37. Permit me to ask a further question, the Kelly Brothers Company have not been in the liquor business since the transaction of the carload of whiskey that you spoke about in 1924 or 1925. Is that right? A. They have not."

Redirect examination:

"By Mr. Braddock: Q. 1. What you mean to say, Mr. Kelly, in answer to cross-question 37 is that since the Louisville warehouse transaction in 1925 and the offer made to Rome Hopkins in 1931, Kelly Brothers Company has not actually sold any whiskey. A. Yes."

The Examiner of Interferences held that in December, 1933, when the repeal of prohibition became effective, Kelly

Brothers Company was the owner of the involved mark, in so far as its use by appellee's assignor is concerned, and that said Exhibit F sufficiently evidenced the transfer of the interest possessed in the mark and its appurtenant good will by Kelly Brothers Company to the Kelly Liquor Company. The examiner further expressed the opinion that the domination of both companies by Mr. Kelly indicated an intention on the part of the corporate persons interested to effect the transfer of the mark from Kelly Brothers Company to the Kelly Liquor Company, and hence awarded priority to appellant.

In reversing this decision of the Examiner of Interferences, the commissioner held that the recitals in Exhibit· F afford no competent evidence that an assignment was made on or about September 1, 1934, of the trade-mark and good will of the business owned by Kelly Brothers Company to the Kelly· Liquor Company, or competent evidence of an assignment at any time prior to the date of execution of Exhibit F.

 We are in agreement with the view of the Examiner of Interferences that, when the repeal of prohibition became effective in December, 1933, Kelly Brothers Company was the owner of the involved trade-mark; and the fact that, while prohibition was in force, said trade-mark was not used, did not constitute an abandonment of the same. But a trade-mark can be transferred only in connection with the transfer of an existing business. A trade-mark is treated as merely a protection for good will, and is not the subject of property except in connection with an existing business. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L. Ed. 713; United States Ozone Co. v. United States Ozone Co. of America, 58 F.2d 1051, 19 C.C.P.A., Patents 1256.

 It is clear from the evidence that when appellant's alleged predecessor, Kelly Brothers Company, assigned to appellant the trade-mark "Camp Nelson" and the "good will of the business in connection with which said trade mark was and is used," Kelly Brothers Company was not in any way engaged in the liquor business and had not been since 1924, when the sale hereinbefore referred to was made to the Minneapolis Drug Company. Appellant's Exhibit F, hereinbefore quoted, does not recite the transfer of any business from Kelly Brothers Company to appellant, for the

very obvious reason that the former had no business to transfer at any time in 1934, or thereafter.

The case of La Fayette Brewery, Inc. v. Rock Island Brewing Co., 87 F.2d 489, 493, 24 C.C.P.A., Patents, 925, involved a question very similar to that before us. There, as here, there was non-use of a trade-mark for many years by predecessors of the parties. In our opinion we said:

"The difficulty with appellant's case, as we see it, is that its assignor had not, for at least eleven years prior to the transfer, had any business in connection with which the marks are shown to have been used, and so it had no 'good will in connection therewith' to convey. The burden here rests upon appellant as the junior party, to establish its case, and, as observed by the Commissioner, any doubt must be resolved against it. Certain phases of the case of Brewster-Ideal Chocolate Co. v. Dairy Maid Confectionery Co., 62 F.(2d) 844, 20 C.C.P.A. (Patents) 848, seem in point here.

\* \* \* \* \* \*

"However, there are some other phases which require consideration. As has been stated, the Commissioner held that the Old Tavern mark in use, first upon beer and later upon near beer, as has been recited, did not become abandoned by its nonuse from 1928 to 1933, during the period when it was illegal to manufacture real beer. It is suggested, in substance, on behalf of appellant, that during the period when 'Ye Tavern' was not being used, say from 1922 to 1933, the same condition as to illegality existed and that there was no more an abandonment of 'Ye Tavern' than of 'Old Tavern.'

"This question we need not determine, because we do not hold that abandonment of the mark by the National Fruit Juice Company resulted from its nonuse during the period mentioned. Whatever may be the legal result of that, it is thought that abandonment did result from the transfer to appellant when it was not accompanied by the transfer of any business with which the mark is shown to have been used, and so appellant acquired no rights in the mark."

We cite this case to the point that, notwithstanding the fact that non-use of a mark during the prohibition period does not constitute an abandonment of the mark, nevertheless the mark may not be legally

transferred to another unless accompanied by the transfer of some business with which the mark is shown to have been used.

While Kelly Brothers Company might have engaged in the liquor business after the repeal of prohibition and then sold such business to appellant, together with the good will and trade-mark used in connection therewith, it did not do so. As hereinbefore noted, it appears from the record that on February 10, 1934, Kelly Brothers Company filed application for registration of the involved trade-mark, and an interference was declared between said application and appellee's application here involved. The interference was dissolved by the Examiner of Interferences upon the ground that Kelly Brothers Company was not actually using the mark in trade at the date of its application and its application was not prima facie allowable.

In the case at bar the Examiner of Interferences seemed to be of the opinion that the fact that Patrick J. Kelly dominated both appellant and the Kelly Brothers Company had a bearing upon the question involved. In his decision he stated: "* * * Furthermore, it appears from the testimony of the last named witness, that he has at all times been the majority stockholder and president of the Kelly Brothers Company and The Kelly Liquor Company, the junior party, and that both of these companies have all along been under his personal operation and control. If so, then it would prima facie seem that the exercise of continuous dominion by one of these corporations over property previously used in the business of the other would of itself indicate an intention on the part of the corporate persons interested to effect its transfer. * * *"

[redacted] We would observe with respect to the foregoing that the domination of both companies by a common stockholder cannot affect the question here involved. Kelly created separate entities as a convenience for his business, and he may not be heard to claim that, because of his common ownership of their stock, no distinction should be made between them.

[redacted] Appellant being the junior party, the burden was upon it to establish by a preponderance of evidence title to the involved trade-mark derived from Kelly Brothers Company. La Fayette Brewery, Inc. v. Rock Island Brewing Co., supra. This we must hold it has failed to do, and therefore it is not entitled to registration of said mark upon its application filed December 23, 1935. By reason of the particular facts in this case, however, we do not hold that the claimed transfer from Kelly Brothers Company to appellant constituted an abandonment of its trade-mark by Kelly Brothers Company. That question is not before us.

There remains the question of whether, in view of our holding with respect to appellant's right to register the mark, appellee is entitled to an award of priority, as held by the commissioner.

Section 7 of said Trade-Mark Act, 15 U.S.C.A. § 87, provides that:

"* * * in every case of interference or opposition to registration he [the commissioner] shall direct the examiner in charge of interferences to determine the question of the right of registration to such trade-mark, and of the sufficiency of objections to registration, in such manner and upon such notice to those interested as the commissioner may by rules prescribe.

"The commissioner may refuse to register the mark against the registration of which objection is filed, or may refuse to register both of two interfering marks, or may register the mark, as a trade-mark, for the person first to adopt and use the mark, *if otherwise entitled to register the same,* unless an appeal is taken, as hereinafter provided for, from his decision, by a party interested in the proceeding, within such time (not less than twenty days) as the commissioner may prescribe." (Italics ours.)

[redacted] As hereinbefore noted, appellee's assignor filed its application on October 9, 1933. This was before the repeal of prohibition became effective. The Examiner of Interferences expressly found that in December, 1933, when the repeal of prohibition became effective, Kelly Brothers Company is deemed to have been the owner of the mark in so far as its use by appellee's assignor is concerned. The commissioner in his decision made no specific finding upon this point, but such finding is implied in his decision. We have no doubt that Kelly Brothers Company did own the mark in December, 1933, and that, had it engaged in the liquor business within a reasonable time thereafter, such ownership would have entitled it to register the mark. This being true, it is clear that when appellee's assignor began to use the mark in

1932, and when it filed its application for registration, it did not own the mark "Camp Nelson," and at that time was not entitled to register the same.

■ . It seems clear that, in order to entitle a party to the registration of a trademark, it must háve been the owner thereof at the time that its application was filed. Section 2 of said Trade-Mark Act, 15 U. S.C.A. § 82, provides that the application for registration, "in order to create any right whatever in favor of the party filing it," must be accompanied by a verified declaration to the effect that the applicant believes himself to be the owner of the trade-mark sought to be registered. Section 13 of said act, 15 U.S.C.A. § 93, provides that, upon a proper petition, "If it appear after a hearing before the examiner that the registrant was not entitled to the use of the mark *at the date of his application for registration thereof*" (italics ours), the commissioner shall cancel the registration. It is clear therefore that if the involved application of appellee is allowed and the mark registered, as held by the commissioner, it would be subject to cancellation upon the petition of any party injured by such registration, because appellee's assignor was not the owner of the mark when its application was filed, said mark being owned at that time by Kelly Brothers Company. In view of the provisions of section 13, it is clear that Congress, in the enactment of said trade-mark act, did not intend that registration of a trade-mark should be granted under said act if it appeared that, at the date of the application for registration, said mark did not belong to the applicant. To ascribe such an intention to Congress would be anomalous in view of the provisions of section 13 of the act.

What the situation might be upon the filing of a new application by appellee, growing out of events occurring subsequent to the date of its application here involved, we need not here inquire.

It follows from the foregoing that, upon the record before us, neither of the parties hereto should be granted registration of the involved mark upon their respective applications.

Accordingly, while we are in agreement with so much of the decision of the commissioner as holds that appellant is not entitled to the registration of the involved mark upon its application here involved, we are in disagreement with so much of his decision as holds that appellee is entitled to the registration of the mark.

Mere reversal of the decision of the commissioner would reinstate the decision of the Examiner of Interferences, which we hold was erroneous; therefore the decision of the commissioner is reversed, in so far as it holds that appellee is entitled to register the mark here involved, and the cause is remanded to the end that proper entries may be made in the Patent Office in accordance with the views hereinbefore expressed.

Reversed and remanded.