SLOANE v. COE, Commissioner of Patents.

No. 7712.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1941.

W. F. Weigester, of Washington, D. C., and Joseph Cashman, of New York, N. Y., for appellant.

W. W. Cochran, Sol., and E. L. Reynolds, both of the United States Patent Office, Washington, D. C., for appellee.

Before GRONER, C. J., and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The complaint, brought under Section 4915, Rev.Stat., 35 U.S.C.A. § 63, sought to authorize issuance of a patent to appellant pursuant to his application No. 692,030 for an improved lubricating composition. Numerous claims originally presented were withdrawn at the trial, but the District Court authorized issuance of a patent containing claims 36 and 37. It dismissed the complaint as to claims 44, 45 and 49. Appeal was duly taken from the judgment so far as it related to claims 44 and 45, but none was noted in time as to claim 49. The issues therefore concern the correctness of the action taken as to claims 44 and 45.

The claimed invention consists in the alleged discovery of an effective method to prevent the formation of acids through oxidation of lubricating oils. Acids so formed in the crank case of an automobile attack and corrode the bearings. This may be prevented by adding a suitable nonoxidant or acid-resisting agent to the lubricating oil.

Appellant's method, as disclosed by claims 44 and 45, consists in adding a proper amount of diphenyl disulfide to highly refined petroleum lubricating oil. The claims are as follows:

"44. An improved lubricating oil composition comprising a highly refined petroleum lubricating oil containing, in an amount sufficient to reduce substantially the tendency of the oil to form acidic material through oxidation, an aromatic sulfur compound soluble in said oil to the extent of at least 0.05% and containing the group OH $(R\langle\!\!\!\bigcirc\!\!\!\rangle-S-)$, in which R is a hydrocarbon radical.

"45. Composition according to claim 44, in which the said aromatic sulfur compound is a disulfide."

The Patent Office and the District Court rejected the claims as having been anticipated by a prior British patent, No. 317,-406, issued to Penniman.[1] The court found that Penniman "discloses the use of diphenol disulfide as an antioxidant for lubricat-

---

[1] Penniman also applied for and received an American patent, No. 1,967,-255, on July 24, 1934, but in respects material here its disclosure was substantially identical with the prior British patent and both the Patent Office and the District Court relied chiefly on the latter.

ing oils," and concluded that this "is the substantial equivalent of the antioxidant of claims 44, 45 and 49."

Appellant insists that there are substantial differences between the disclosure of the claims and that of Penniman in two respects: first, in the chemical composition of the antioxidant and, second, in the character of the lubricating oil to which it is added. The claims specify "highly refined petroleum lubricating oil," whereas Penniman specified mineral oil, not necessarily highly refined and containing some admixture of vegetable oils. The claims may be taken as specifying diphenyl disulfide,[2] whereas Penniman discloses, among other compounds, diphenol disulfide. The latter contains carbon, hydrogen, sulfur and oxygen, while the former contains only carbon, hydrogen and sulfur. But the allegedly more distinctive difference is in the fact that appellant's compound, diphenyl disulfide, contains the hydrocarbon radical R which is not present in diphenol disulfide. Appellant asserts that its invention over Penniman consisted in the combination of these features, namely, inclusion of the radical R in the antioxidizing agent and the use of that agent in highly refined mineral oil having no admixture of vegetable oils. Diphenol disulfide, it is claimed, is too insoluble in such a lubricating oil to have any appreciable effect in reducing acid formation, whereas diphenyl disulfide dissolves sufficiently to become a highly satisfactory acid resistant. Appellant attempts to support its position by the testimony of chemical experts, all employed by his employer, concerning the effectiveness of his method and the ineffectiveness of Penniman as determined by laboratory tests. We think the evidence, though presented thus favorably for appellant, is insufficient to show that the trial court erred in its findings and conclusions.

The experts' testimony related chiefly to the results obtained in the laboratory by application of the so-called Underwood test, in full or modified form. Under controlled conditions of time, temperature and other factors which the witnesses stated would approximate conditions of actual use in motor operation, it was found that diphenyl disulfide was a more efficient acid resistant than diphenol disulfide. Lynch testified that an oil that would tolerate as much as twenty-thousandths of a per cent of lead oxide is suitable for use in a regular automobile engine, but with less than that "it was apt to cause corrosion." According to his running of the test the reference oil would tolerate about five-thousandths of a per cent without corrosion, diphenyl disulfide tolerated twenty-five thousandths, and diphenol disulfide "would not tolerate as much as fifteen thousandths." His conclusion was that the latter was unsatisfactory, though it improved the oil "slightly."

Dr. Mikeska ran modified Underwood tests which led him to the same general conclusion. After eight hours his test with diphenol disulfide resulted in breakdown of the bearings; with diphenyl disulfide it showed no evidence of corrosion. He determined the solubility of diphenol disulfide under the conditions of his experiment as less than two thousandths of one per cent, that of diphenyl disulfide as one per cent. The evidence showed that under the selected experimental conditions diphenyl disulfide is clearly superior to diphenol disulfide as an acid-resisting agent and that use of the former is a substantial and successful improvement over use of the latter. The experts concluded from the tests that diphenol disulfide is unsatisfactory as an antioxidant. From this appellant concludes that use of his compound was inventive over use of Penniman's.

We think it is doubtful at least that the tests proved beyond question the conclusions drawn from them by the witnesses. The tests were made in the laboratory and were not verified by actual use under road conditions. The only evidence to show identity or approximation of the experimental conditions with those of actual use on the road consisted in the opinions of the experts, expressed generally without factual data to support them. This was true also concerning the standard which they selected for measurement of toleration of lead oxide under the Underwood tests. Why twenty thousandths of a per cent rather than some other figure was selected is

---

[2] Claim 44 specifies "an aromatic sulfur compound * * * containing" the radical R, a hydrocarbon radical, whereas claim 45 specifies that the aromatic sulfur compound shall be a disulfide. The difference is not material upon the question of invention, since the alleged invention by Sloane over Penniman consists in the inclusion of the radical R, whether in the form of a sulfide or that of a disulfide.

not shown. Lynch testified that he reached this conclusion after a number of tests, but the nature of the tests and the methods used in making them were not disclosed. Furthermore, appellant's experts admitted that diphenol disulfide made some reduction in acidity, even under the carefully selected and confined conditions of the tests. Lynch admitted that it improved the oil "slightly," but he also said it "would not tolerate as much as fifteen thousandths of a per cent of lead oxide" without corrosion. The statement may be taken as conservative and, we think, as admitting in effect that there was substantial improvement, though in the opinion of the witness not enough to be satisfactory. Taken in connection with the failure to verify the standard of measurement more accurately, this falls short of demonstrating conclusively that diphenol disulfide was entirely unsatisfactory, even within the restricted conditions of experiment. Likewise, the record fails to show why Mikeska selected eight hours rather than some other period as the time for the running of his tests.

 But if the tests be taken as demonstrating that diphenyl disulfide was satisfactory and diphenol disulfide unsatisfactory under the selected conditions, it does not follow that use of the former was inventive over use of the latter. To negative anticipation more must be done than merely to show improvement in a particular instance of application of a previously discovered general process, if the latter fairly may be said to indicate the former to persons skilled in the art. We cannot say, upon the record which has been made, that the Patent Office and the trial court were clearly wrong in finding that use of diphenyl disulfide was anticipated by Penniman.

Penniman's disclosure made apparent the basic or generic conception, namely, the use of organic compounds, including sulfide groups and specifically diphenol disulfide, as antioxidants when added to lubricants for internal combustion engines.[3] Though it does not name each member of these groups, it does not exclude, but on the contrary is broad enough to include alkylated sulfides, specified in appellant's claims. It mentions specific compounds, including phenol disulfide, illustratively, but other substances are indicated by groups, such as phenols and amino and amide compounds. In this respect the disclosure is not substantially different from that of Sloane's application.[4] The latter also specifies by classes, most broadly "aromatic sulfur compounds," with illustrative subordinate groups. It is not limited to sulfurized hydrocarbons, which are "generally preferred," though "other elements may be present * * * without disadvantage, for example, oxygen." Presence of the hydroxy group "is particularly desirable, the other groups mentioned * * * do not destroy the effect of the mercaptan or disulfide groups." Furthermore, Sloane's application contains no express mention of

---

[3] His specification was as follows: "The anti-oxidant may be any substance that in a general sense reduces the effect of oxidation or air upon the lubricant. As such there may be mentioned: tetra ethyl lead, phenol disulphide, amino, and amide compounds, phenols such as pyrogallol, hydroquinone, and other substances such as elementary sulphur and the dyestuff malachite green or the salts thereof."

[4] The Sloane disclosure reads: "This new class of inhibitors comprises in its broadest sense aromatic sulfur compounds in which the sulfur atom is attached directly to a carbon atom. * * * Aromatic disulfides and mercaptans may be used such as phenyl, cresyl or higher alkylated disulfides, mercaptans and the corresponding naphtyl or anthryl, phenanthryl derivatives or their alkylated products and the relative positions of the sulfur and alkyl groups in the rings are of only minor significance, all being of good inhibiting power. More than one sulfur atom may be attached to a single ring if desired, as in the di or tri thiophenols, cresols and naphthols.

"All of the substances mentioned above consist only of the elements carbon, hydrogen and sulfur or, in other words, they are sulfurized hydrocarbons, and while these are generally preferred other elements may be present in the molecule without disadvantage, for example, oxygen or nitrogen and similar elements. As examples of such materials can be mentioned aromatic disulfides and mercaptans containing hydroxy, nitro, amino, azo and hydrazo groups. The presence of the hydroxy group is particularly desirable but the other groups mentioned, while not particularly desired, do not destroy the effect of the mercaptan or disulfide groups. In the same manner carboxyl, aldehyde and keto groups may be present. It will be understood that the compounds containing only carbon, hydrogen and sulfur are preferred, particularly disulfides and mercaptans."

alkylated sulfides containing the hydroxy group, though he suggests alkylation of sulfides which contain no oxygen and use of sulfides which contain oxygen. Though his generic group, "aromatic sulfur compounds," is narrower than Penniman's specification taken broadly, in view of the qualifications mentioned we think it is fair to conclude, as appellee suggests, that Penniman contains "substantially as definite a disclosure of what is recited in the appealed claims as does Sloane's application. In neither case is there an express disclosure. The disclosure must be inferred and the inference is as well founded in the one case as in the other."

The same conclusion applies, we think, to the specification of the oils with which the inhibiting agent is used. Penniman specified mineral oils suitable for lubrication, including specifically that of internal combustion engines. Because he was concerned, among other things, with the property of "oiliness," especially in ordinary petroleum, he suggested addition of saponifiable oil or its fatty acids to improve this quality, and in this connection the use of animal and vegetable oils "when high temperatures prevail." But he also suggested the use of the higher alcohols and ketones, organic sulfides and some of the organic metallic salts. Penniman was concerned with lubricating oils generally and their performance under various conditions of heat.[5] He did not exclude "highly refined petroleum lubricating oil," specified in the appealed claims, and from his emphasis both upon petroleum oils without limitation in this respect and upon the variable conditions of its use, we think the claims fairly readable upon his specification. Though he suggested the admixture of vegetable oils as stated above, the specification does not disclose that this was regarded as essential, or perhaps even beneficial, in all cases,

and if it had done so, there is no evidence which demonstrates that omission of the admixture in such oil as appellant specifies required more than the knowledge of one skilled in the art to make. Nor is there evidence to show that admixture of vegetable oils in quantities specified by Penniman would cause appellant's composition as stated in the appealed claims to be ineffective or to work less satisfactorily. Appellant's contention, in effect, requires the exclusion from Penniman's disclosure of all oils which are substantially paraffinic in type, having a high rate of oxidation.

Enough has been said, we think, to show that appellant's claimed invention consisted in specific applications fairly inferable from Penniman's disclosure in both of its material respects, namely, the specific antioxidant and the specific lubricating oil set forth in the claims. The latter are almost, if not quite, as readily readable upon Penniman's disclosure as upon appellant's application. In any event, enough has not been shown to convince us that the trial court's findings and the decision of the Patent Office to this effect were clearly erroneous. That burden was appellant's. Since it has not been discharged, we are not at liberty to interfere with the decree. Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449.

It is not necessary for us to consider other contentions advanced by the Commissioner, relating particularly to questions of estoppel arising from appellant's reliance upon Penniman in an interference proceeding which was dissolved at appellant's instance or from his listing in his application as "particularly desirable" the very group of compounds to which diphenol disulfide belongs.

The judgment is affirmed.

---

[5] "The present invention is therefore broadly concerned with the use of lubricating oil stock whether derived from petroleum or the products of distillation of coal and shale, that has the lowest possible viscosity for the condition under which the machine operates; that is, the lowest viscosity that is obtainable with the requisite flash point to withstand the temperature prevalent during use, and this applies whether the lubricant stock is derived from a straight paraffin stock or from a so-called asphaltic or semi-asphaltic base oil."