28 C.C.P.A.(Patents)

**PENETRENE CORPORATION v. PLOUGH, Inc.**

**Patent Appeal Nos. 4492, 4493.**

Court of Customs and Patent Appeals.
July 2, 1941.

540

H. F. McNenny, of Cleveland, Ohio (Richey & Watts, of Cleveland, Ohio, and James A. Hoffman, of Washington, D. C., of counsel), for appellant.

A. Yates Dowell, of Washington, D. C., (R. F. Whitehead, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

These are appeals taken from the decisions of the Commissioner of Patents affirming decisions of the Examiner of Interferences in two trade-mark cancellation proceedings (in the nature of cross-suits), numbered, respectively, 3086 and 3300.

In his decision in No. 3300, involved in appeal No. 4493, as taken to this court, the commissioner stated the cases as follows:

"In this cancellation proceeding, No. 3300, Plough Inc., seeks to cancel trademark registration No. 205,555, registered November 10, 1925 to The Penetrene Corporation for liniments, and The Penetrene Corporation, by way of counterclaim, seeks cancellation of two trade-mark registrations owned by Plough, Inc., to wit: registration No. 100,580, registered October 20, 1914, for medicinal liniment, and renewed to Plough, Inc., and registration No. 151,573, registered February 7, 1922, for mouth wash.

"This cancellation proceeding No. 3300 is companion to another cancellation proceeding, No. 3086, in which The Penetrene Corporation (The Lawrence-Williams Company, assignee, substituted) seeks cancellation of trade-mark registration No. 296,485, registered August 9, 1932, by Plough, Inc., for a medicinal preparation consisting of mutton suet salve for external use in the treatment of various ailments, including rheumatic pains, lumbago, neuralgia, sprains, and muscular soreness, bruises, and certain other ailments, and in its counterclaim in proceeding No. 3300 again prays for cancellation of registration No. 296,485.

"These two cancellation proceedings were consolidated for the purpose of argument and briefing at final hearing and on this appeal. Companion decisions were rendered by the Examiner of Interferences."

It appears that the Penetrene Corporation was organized in 1925 as an Ohio corporation by Mr. Paul Lawrence, who was at that time owner of the controlling interest in the Lawrence-Williams Company, also an Ohio corporation, and that

the former was merged with the latter, September 11, 1937, at which time the Penetrene mark here involved was assigned to the latter, and the business was continued under the name of the latter. Hence, the style of the respective cases.

It is agreed that the goods of both parties are of the same descriptive properties and that the marks are confusingly similar. So, the sole issue in the cases is that of priority of appropriation of the marks.

It appears that on May 18, 1897, one Gustav H. Frommann secured registration, No. 30,040, of a mark comprising the word "Penatrine," below which is a representation of a sealing wax seal bearing the inscription "P Co.," surrounded by two concentric circles, used on "medicinal remedies for man and beast—viz., hoof-dressings, salves, ointments, liniments, and tonics," and that in April 1925 Frommann for a valuable consideration assigned the mark and registration "together with the good will of the business in connection with which the said mark is used" to the Penetrene Corporation, the instrument of conveyance reciting that Frommann "hereby relinquishes all of his rights to the use of the word 'Penatrine' as a trade-mark and agrees not to use the said word again as a trade-mark."

This transaction will be the subject of discussion later in this opinion.

On November 10, 1925, the Penetrene Corporation secured registration No. 205,-555, which is described by the commissioner as "a composite mark comprising the word 'Penetrene' appearing in white letters on a solid black oval pierced by an arrow." The certificate of registration No. 205,555 recited that the Penetrene Corporation was the owner of registration No. 30,040, supra.

Appellant relies upon the foregoing transactions to establish priority, as will appear in our subsequent discussion of the cases.

It appears that appellee (which is a concern that had its beginning at Memphis, Tennessee, in 1908, was incorporated under the laws of Tennessee in 1918 and reincorporated under the laws of Delaware in 1923) on May 23, 1932, received the assignment of a registration, No. 100,580, of the word "Penetroil" granted to one Harry W. McChesney of St. Louis, Missouri, October 20, 1914, for use on a med-

icinal liniment, and on November 9, 1933, received an assignment of a registration, No. 151,573, of the word "Penetro," granted to "Penetro Chemical Company, of Atlantic City, New Jersey, and Philadelphia, Pennsylvania," February 7, 1922, for use on a mouth wash. In both instances the assignments included the good will of the business of the respective assignors. It is noted that on the copy of the "Penetroil" registration, appearing in the record, it is recited that it was renewed to Plough, Inc. The date of such renewal does not appear on the paper, but it is stated in the decision of the Examiner of Interferences that it was renewed in 1934.

The registration of appellee which appellant seeks to have cancelled in cancellation proceeding 3086 (appeal No. 4492) is that of the word "Penetro," being, as stated in the quotation from the decision of the commissioner, supra, registration No. 296,485 granted to appellee August 9, 1932, and, as was stated by the commissioner, petition for cancellation of this registration is also included in cancellation proceeding 3300 (appeal No. 4493) along with the petition for the cancellation of registrations Nos. 100,580 and 151,573.

From the foregoing history of the various registrations, assignments, etc., we are of opinion that, upon the record before us, if appellant be held entitled to claim under or by virtue of the registration of what we may designate as the Penatrine mark (registration No. 30,040 to Frommann, dated May 18, 1897) as assigned to it by Frommann, it (appellant) would be entitled to prevail in both cases before us on appeal.

That question, therefore, will be considered first.

The statement of the Examiner of Interferences relative to appellant's rights respecting the "Penetrene" mark reads as follows:

"Respondent claims no use of the notation 'Penetrene' shown in Registration No. 205,555 as of a date earlier than that alleged therein, viz., February 17, 1925, but for the purpose of establishing priority relies upon rights it is said to have acquired as assignee of the before mentioned Registration No. 30,040. It fails to appear that respondent has ever made use of the mark 'Penatrine' and associated seal design for which this latter registration issued; respondent contends, in effect, however, that such mark and the 'Penetrene'

mark of Registration No. 205,555 symbolize the same trade mark right and that its use of the latter mark in trade amounts to a continuation of the use had by its alleged predecessor of the mark shown in Registration No. 30,040.

"This contention of respondent in some circumstances perhaps might be sound. Under those here disclosed and referred to below, however, it seems to the examiner that respondent obtained no interest in the mark of Registration No. 30,040, unless it was merely the right to use the mark as between respondent and its assignor, the registrant.

"The notation 'Penetrene' of Registration No. 205,555 was adopted early in 1925 as a mark for a 'human Liniment' by the respondent, The Penetrine Corporation, newly organized by respondent's witness Lawrence for the purpose of exploiting this product. An application, later resulting in Registration No. 205,555, was filed for this mark, registration being at first refused by this Office, however, in view of said Registration No. 30,040, issued to Gustav H. Frommann. This refusal was withdrawn upon the filing of an instrument of assignment of Registration No. 30,040 to respondent by Frommann.

"It seems that upon being advised of such refusal to register, it was ascertained by a representative of respondent that Frommann was willing to part with the 'Penatrine' mark, respondent being so informed in a telegram of March 24, 1925, which reads in part as follows:

"'Trademark still used by Frommann— but he is willing to sell for nominal sum Stop Not safe for you to go ahead Stop Wire me tomorrow if you are willing to make offer for trade mark or will adopt another mark.'·

"Further negotiations resulted in a formal ·assignment to respondent by Frommann which is stated to include the 'trademark and the registration thereof No. 30,-040, together with the good will of the business in connection with which the said mark is used,' for the sum of $1,000.

"Although the particular description of goods contained in Registration No. 30,-040 as above quoted no doubt includes merchandise possessing the same descriptive properties as the 'human liniment' sold by respondent under the 'Penetrene' mark, it is gathered from the testimony of Lawrence that the respondent has only sold under this mark the specific product which

it originated. The record does not show that the respondent is familiar with the ingredients or uses of any merchandise sold by Frommann, nor is it shown that respondent's liniment is intended for the same uses as any of the preparations sold by Frommann or is a suitable substitute therefor. It also seems that Frommann was located in New York City whereas respondent's business has been carried on in Cleveland, Ohio and vicinity, 'Penctrene' never having been sold on a national scale. So far as here appears, neither the nature of respondent's goods nor the marketing thereof has been such as to meet a demand which may have been created by merchandise sold by Frommann.

"While the resemblances between the mark used by respondent and that of Registration No. 30,040 apparently predominate, there are differences therein, particularly in appearance. The substitution of one of these marks for the other would therefore seem to involve the possibility of the loss of at least some business and good will, if used in the same business. The fact that respondent, who entered the field only a short time before the assignment of Registration No. 30,040 to it, has not used the mark shown therein accordingly would appear to be rather significant. Viewed in relation to other circumstances attending the assignment by Frommann as outlined above, the examiner is persuaded that such assignment amounted to a mere naked transfer of the registered mark, dissociated from any business or accompanying good will of the assignor. Such a transfer, while it may suffice, as it did here, to overcome a statutory bar to registration of a mark by the assignee, adds nothing to a claim of priority and ownership of the mark by such assignee as against some third person and actual prior user in good faith.

"Mayer Fertilizer & Junk Co. v. Virginia-Carolina Chemical Co., 35 App.D.C. 425, 156 O.G. 539, 1910 C.D. 399."

So far as we are able to ascertain from the record, the correctness of the findings of fact by the Examiner of Interferences respecting the non-use by appellant of what we designate as the Penatrine mark was not questioned before the commissioner in the appeal to him. He obviously approved its correctness and it has not been challenged before us.

Appellant, however, does challenge the correctness of the conclusion of law concurred in by both tribunals of the Patent

Office, based upon those findings of fact, and alleges, as its eleventh reason of appeal, that the board erred "In failing to properly apply and follow the ruling of the Supreme Court in Beech-Nut Packing Co. v. Lorillard, Co., 273 U.S. 629, [47 S.Ct. 481, 482, 71 L.Ed. 810]."

The case so cited was a suit in equity wherein Beech-Nut Packing Company, a corporation of New York, charged the P. Lorillard Company, a corporation of New Jersey, with infringement of its (Beech-Nut Packing Company's ) registered trademark, "Beech-Nut," and with unfair competition. It appears from the court's opinion that Beech-Nut Packing Company relied upon a registration dated December 31, 1912 and that the P. Lorillard Company claimed "the mark 'Beechnut' for tobacco through successive assignments from the Harry Weissinger Tobacco Company, of Louisville, Kentucky, which used it from and after 1897." It further appears that in 1910 the mark (whose original validity was not contested in the suit) was held by the American Tobacco Company; that in that year only twenty-five pounds of Beech-Nut tobacco were sold; that the trade-mark was "left dormant" until after the dissolution of its holder, the American Tobacco Company, in 1911; that the P. Lorillard Company "took over the mark ['Beech-Nut'] with many others" and that in "an effort to get a new brand that would hit the present taste, this mark ['Beech-Nut'] was picked out, some of the adjuncts were changed, and in 1915 the new tobacco was put upon the market." The decision in the case was to the effect, as expressed in the first syllabus accompanying the opinion, that "A trade-mark is not abandoned and destroyed, as a matter of law, merely through disuse for five years." The second syllabus reads, "The fact that the good will once associated with a trade-mark has vanished does not end at once the preferential right of the proprietor to try it again on goods of the same class."

That case, as of course, was decided on the basis of the particular state of facts involved. The entire situation is not set forth in the court's opinion there but by reference to the case of United States v. American Tobacco Company, 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663, in which the dissolution of the American Tobacco Company was decreed, it is found that the company (often referred to in common parlance as the "Tobacco Trust") owned "15,813 out of 20,000 shares of preferred

and all the common stock (30,000 shares)" of the P. Lorillard Company (see footnote on page 145 of 221 U.S., page 635 of 31 S. Ct., 55 L.Ed. 663) and it is our understanding that in dividing the vast assets owned or held by the American Tobacco Company, the P. Lorillard Company took over different properties, including trade-marks and the business with which such marks were, or had been, associated.

That clearly differentiates the Beech-Nut Company case, supra, from the case at bar under the facts stated in the decision of the Examiner of Interferences, supra. Appellant here did not take over and continue to conduct the business of Frommann with which registration No. 30,040, was associated, and the transaction between appellant and Frommann seems to us to have been, in a legal sense, merely an attempt to convey naked title to the registration.

We find nothing in the Beech-Nut Company case, supra, indicating that it was the intention of the Supreme Court to introduce what the brief for appellant designates as a "modern viewpoint of trademarks" out of harmony with the principle that a trade-mark is assignable only in connection with the business in which it is used, which principle has been consistently applied by this court and, so far as we are advised, by all other courts in the United States. See Kelly Liquor Co. v. National Brokerage Co., Inc., 102 F.2d 857, 26 C.C.P.A., Patents, 1110, and cases therein cited.

It was held below, in substance, that the conveyance executed by Frommann, not being accompanied by the transfer of any business with which the Penatrine mark is shown to have been used, resulted in the abandonment of the mark to the public and that appellant acquired no rights therein. With this holding we agree. See LaFayette Brewery, Inc., v. Rock Island Brewing Co., 87 F.2d 489, 24 C.C.P.A., Patents, 925, and cases cited therein.

It is a further contention of appellant that appellee's Penetroil and Penetro registrations (Nos. 100,580 and 151,573) are invalid under the statute; that appellant is injured by them and that they must be cancelled even though it be held that the Penatrine mark (registration No. 30,040) became abandoned.

With respect to the question of invalidity, it is pointed out in the brief for appellant that Frommann's registration, No. 30,-

040, granted May 18, 1897 (which must be presumed to have been valid), was in effect at the time registrations Nos. 100,580 (dated October 20, 1914) and 151,573 (dated February 7, 1922) were issued to appellee's respective predecessors in ownership, and it was and is urged, as stated in the decision of the Examiner of Interferences, that " * * * the confusion in trade clause of Section 5 [of the Trademark Registration Act 15 U.S.C.A. § 85], constituted a statutory bar to their issuance."

The Examiner of Interferences did not pass upon the validity of the marks so attacked, but (citing certain cases) said: "In view of the conclusion stated regarding the matter of ownership as between the parties hereto, it is deemed that these registrations of petitioner cannot well involve any 'injury' to respondent within the meaning of Section 13 [15 U.S.C.A. § 93]. In the absence of such injury this Office lacks jurisdiction to cancel a registration, even if it were invalid."

To this holding the commissioner agreed "for the reasons stated by the Examiner of Interferences."

However, in a subsequent part of his decision relating to the cancellation of appellant's Penetrene mark, the commissioner said: "Plough, Inc., is entitled, through its predecessors, to carry back the exclusive right to the use of the mark 'Penetro' for mouth wash and the use of the mark 'Penetroil' for medicinal liniment to dates long prior to The Penetrene Corporation's entry into the field. Registrations 100,580 and 151,573 being valid and existing and The Penetrene Corporation's prayer that these marks be cancelled being denied, the Examiner of Interferences properly adjudged Registration No. 205,555 should be cancelled in view of those registrations."

We are of the opinion that appellant is not in a position in this proceeding where it may be heard to attack the validity of the registrations in question. Since it may not claim any rights by virtue of the Penatrine mark, registration No. 30,040, it was not injured by the registrations of those marks to appellee's respective predecessors in ownership. The authorities cited by appellant which it claims support its contention of injury have been carefully examined, but we find that they were cases which arose upon states of fact that do not exist here, and hence may not be regarded as controlling.

In view of the situation described, appellant has nothing upon which it may rely except its registration (No. 205,555) of the Penetrene mark, dated November 10, 1925 (subsequent in time to the date of both registrations Nos. 100,580 and 151,573), and appellee is seeking cancellation of that registration.

Appellee's registration of the Penetro mark, No. 296,485, is dated August 9, 1932, which is subsequent to the date of appellant's mark, and were these the only marks involved, appellant clearly would be entitled to have the mark of appellee cancelled, but by reason of appellee's rights growing out of its acquirement and use of the registrations granted its respective assignors, together with the businesses in which the marks were used by said assignors, the situation is reversed, and appellee is entitled to have appellant's registration cancelled.

In the foregoing opinion both cases before us on appeal have been discussed, and they need be separated only for formally stating our decisions.

Appeal No. 4492—Cancellation No. 3086.

Cancellation proceeding No. 3086, involved in appeal No. 4492, was initiated by appellant seeking the cancellation of appellee's registration No. 296,485. The petition was dismissed by the Examiner of Interferences and the Commissioner of Patents affirmed.

We affirm the decision of the commissioner.

Affirmed.

Appeal No. 4493—Cancellation No. 3300.

Cancellation proceeding No. 3300, involved in appeal No. 4293, was initiated by appellee seeking cancellation of appellant's registration No. 205,555 and resulted in a counter petition wherein appellant sought cancellation of registrations Nos. 100,580 and 151,573 and also renewed the petition for cancellation of appellee's registration No. 296,485.

The Examiner of Interferences dismissed the counter petition of appellant and sustained the petition of appellee, and the Commissioner of Patents affirmed.

We affirm the decision of the commissioner.

Affirmed.

One other matter requires decision.

■ After the filing of the record certified to the court on the appeal, appellee (asserting that certain proceedings which

had taken place in the Patent Office, record of which was not included in the transcript as filed before us, and that this was essential for a complete presentation of all the features of the case) suggested diminution of the record and we granted certiorari, subject to the assessment of costs.

We have found on full consideration of the case that the subject matter certified in response to the writ and printed as a part of the record related to interlocutory proceedings in the Patent Office which were not involved in the appeal to us and which under the state of the pleadings in the appeal required no action by us. That subject matter, therefore, was unnecessary and it is proper that appellee should pay the costs incident thereto. It is so ordered.