OLD CHARTER DISTILLERY CO., Inc., v. OOMS, Commissioner of Patents, et al.

Civil Action No. 22155.

District Court of the United States for the District of Columbia.

Oct. 8, 1947.

Herbert J. Jacobi, of Washington, D. C., and Asher Blum, of New York City, for plaintiff.

L. Kalish, of Philadelphia, Pa., and Malcolm Langford, of Washington, D. C., for defendant Continental Distilling Corporation.

E. L. Reynolds, of Washington, D. C., for defendant Commissioner of Patents.

HOLTZOFF, Justice.

This is an action brought by the Old Charter Distillery Company against the Commissioner of Patents and the Continental Distilling. Corporation under Section 4915 of the Revised Statutes, U.S.C.A., title 35, § 63, to review the action of the Commissioner directing the cancellation of a trade-mark claimed to be owned by the plaintiff and known as "Old Charter." This trade-mark is applied to whiskey. The cancellation proceeding was instituted in the Patent Office by the Continental Distilling Corporation under Section 13 of the Trade-Mark Act of February 20, 1905, U.S.C.A., title 15, § 93. It was held in United States ex rel. Baldwin Co. v. Robertson, 265 U.S. 168, 44 S.Ct. 508, 68 L.Ed. 962, that a suit in equity lies to review the Commissioner's decision.

The defendant, Continental Distilling Corporation, is the owner of another whis-

key trade-mark, to wit, "Charter Oak." It is conceded that there is confusing similarity between the two trade-marks. The controversy is as to which of the two parties has the prior right to a whiskey trade-mark embracing the word "Charter." The Commissioner of Patents sustained the rights of the Continental Distilling Corporation and cancelled the trade-mark registered by Old Charter Distilling Co., Inc., the plaintiff in this action.

In a case such as this there is a presumption in favor of the decision of the Commissioner of Patents, because in essence a suit under Section 4915, R.S., although in form an action de novo, is actually a proceeding to review the ruling of an administrative agency. Unless it clearly appears that the administrative agency was in error, its decision should be affirmed.[1] This presumption, however, is much more potent in respect to a finding of fact than it is in respect to a question of law.

There is no dispute that the trade-mark "Old Charter" has been in use for a great many years, commencing at least as far back as 1874. The trade-mark has been utilized continuously since 1874, except during the prohibition period and for a few months immediately following the repeal of the Eighteenth Amendment. Even during the prohibition era it was employed at sporadic intervals in connection with liquor manufactured for medicinal purposes. The trade-mark "Charter Oak" on the other hand, had been abandoned and had not been in current use for a long period prior to the time here in question. The defendant Continental Distilling Corporation registered the trade-mark "Charter Oak" in 1933, while the plaintiff registered the trade-mark "Old Charter" the following year. The points in issue are whether the trade-mark "Old Charter" was actually in existence and whether the plaintiff owned it, when the application for registration was filed. It is not questioned that the trade-mark was in existence up to and including July 8, 1933.

The fact that its use was suspended during certain periods while the Prohibition Amendment was in effect is immaterial, because it has been held that failure to use a trade-mark during that interval will not be construed as an abandonment. Kelly Liquor Co. v. National Brokerage Co., 102 F.2d 857, 860, 26 C.C.P.A. (Patents) 1110.

On July 8, 1933, Wright & Taylor Corporation, which then owned the "Old Charter" trade-mark and the business in connection with which it was being used, executed two bills of sale. The first conveyance was to the U. S. Distillers, Inc., by which there were transferred a certain quantity of Old Charter whiskey and the Old Charter trade-mark. By the second instrument Wright & Taylor assigned to Wright-Taylor Distillery Company the Old Charter trade-mark and the good will as applied to liquors of all kinds of Wright & Taylor.

It is well settled that the ownership of a trade-mark may not be transferred except in connection with a conveyance of the business or of good will.[2] Consequently, the first of these documents by which the grantor purported to convey the trade-mark to U. S. Distillers, Inc., was ineffective, because the conveyance did not accompany a sale of the business or good will. On the other hand, the second conveyance to Wright-Taylor Distillery Company was valid, because a trade-mark may be properly transferred in connection with a sale of good will. It is urged, however, that since an ineffective attempt to assign a trademark results in its abandonment,[3] the first of these instruments must be deemed to constitute an abandonment of the "Old Charter" trade-mark and, therefore, to have resulted in its destruction. Abandonment, however, depends in large part on the intention of the parties. When the original owner, simultaneously with the void assignment, executed a conveyance of the trade-mark and good will to the Wright-Taylor Distillery Company, he can hardly

[1] Morgan v. Daniels, 153 U.S. 120, 124, 14 S.Ct. 772, 38 L.Ed. 657; Radtke Patents Corp. v. Coe, 74 App.D.C. 251, 255, 122 F.2d 937; Durham v. Seymour, 6 App.D.C. 78, 91; Buck v. Ooms, D.C., 63 F.Supp. 715, 717.

[2] U.S.C.A., title 15, § 90; Kelly Liquor Co. v. National Brokerage Co., 102 F.2d 857, 26 C.C.P.A. (Patents) 1110.

[3] Kelly Liquor Co. v. National Brokerage Co., supra, 102 F.2d 857, at 861, 26 C.C.P.A. (Patents) 1110.

have intended to abandon this valuable asset. It follows, therefore, that on July 8, 1933, the trade-mark "Old Charter" was validly conveyed to Wright-Taylor Distillery Company.

On October 2, 1933, about three months after the above mentioned conveyance, Wright-Taylor Distillery Company transferred the trade-mark and the good will connected therewith, to the Wright & Taylor Distilling Corporation. Apparently in order to avoid any question as to the chain of title, Wright & Taylor on the same day executed an instrument which was in the nature of a quit-claim deed or a bill of sale of the trade-mark and good-will to the Wright & Taylor Distilling Corporation. About two and one-half months later, on December 14, 1933, another conveyance was made by Wright & Taylor Distilling Corporation to Bernheim Distilling Company, a Kentucky corporation, whereby the trade-mark and the business of selling whiskey under the trade-mark was conveyed to the latter. The testimony shows that by mesne conveyances, which involved the transfer of assets as well as of the trade-mark, title to the trade-mark "Old Charter" ultimately passed to the plaintiff in this action.

The validity of the last mentioned chain of conveyances was not questioned by the Commissioner. It was held by him, however, that the prior transfer by the Wright-Taylor Distillery Company to the Wright & Taylor Distilling Corporation conveyed nothing, on the ground that the Wright-Taylor Distillery Company, not having used the trade-mark had nothing to transfer. Apparently it is the fact that during the few months during which it held title to the trade-mark, the Wright-Taylor Distillery Company was unable to begin the manufacture and sale of whiskey, although efforts to that effect were being made. This result is not surprising because the Eighteenth Amendment was then being repealed. It is natural that some time should have elapsed before the distilling of whiskey and its sale could be resumed. The Commissioner held, however, that failure to do business under the trade-mark on the part of the Wright-Taylor Distillery Company destroyed the trade-mark, that the conveyance to Bernheim Distilling Company conveyed

nothing, and that consequently the subsequent conveyances were also ineffective.

 I am unable to agree with the Commissioner that a failure for a few months in 1933 and 1934 to manufacture whiskey under the Old Charter trade-mark, bearing in mind the circumstances as they then existed, was sufficient to lead to its abandonment and to cause this valuable property to evanesce and disappear. A short suspension of business does not lead to the destruction of the good will of a business and should not result in such a disastrous consequence to its trade-mark. Common experience is to the contrary. Substantial property rights are not to be so lightly dealt with. If there had been no transfer of the trade-mark by the original owner, but the original owner had been unable to resume operations during the short period here in question, surely it could not be successfully contended that the trade-mark would have been destroyed as a result of suspension of operations for a few months. The mere fact that the assignee of the trade-mark found himself unable to commence operations during a similar period should not have a more detrimental effect in respect to the property rights involved. The law does not bar the sale of a trade-mark and good will during a temporary cessation of business. The Supreme Court has held in Beech-Nut Packing Company v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810, in an opinion written by Mr. Justice Holmes, that the suspension of use of a trade-mark lasting as long as four or five years does not necessarily result in its abandonment and destruction.

Motlow v. Oldtyme Distillers, 88 F.2d 732, 24 C.C.P.A.(Patents) 1094, upon which reliance is placed, does not seem to be in point. In that case there was no proof, insofar as the opinion of the Court discloses, of any prior use of the trade-mark. This feature seems to be an important distinction in principle between the Motlow case and the case at bar.

Likewise the decision in Penetrene Corporation v. Plough, Inc., 121 F.2d 539, 543, 28 C.C.P.A.(Patents) 1307, is not in point, because in that case the conveyance of the trade-mark was not accompanied by the

transfer of any business. In the case at bar the good will of the business was transferred together with the trade-mark.

The equities are strongly with the plaintiff. The trade-mark "Old Charter" is a valuable trade-mark which has been in use since 1874, with an interruption only during the period of prohibition. To seize upon technical defects in respect to the mesne conveyances of the trade-mark and to penalize its owners because of the difficulties in resuming business occurring after repeal of the Prohibition Amendment, as a basis for a conclusion that the trade-mark ceased to exist and, therefore, could not have been assigned, does not accord with the Court's view of the equities or of the law.

In the light of these considerations, the conclusion is reached, even bearing in mind the presumption of validity that attaches to the ruling of the Commissioner of Patents, and the heavy burden of proof imposed on the plaintiff in actions of this type, that the "Old Charter" trade-mark was erroneously canceled by the Commissioner.

Judgment for the plaintiff. Counsel will submit proposed findings of fact and conclusions of law.