# MATHY v. REPUBLIC METALWARE CO.

---

TRADEMARKS; PRIORITY OF ADOPTION AND USE; PATENTS; ASSIGNMENT AND LICENSES; FORFEITURE; ABANDONMENT.

1. The only purpose of a trademark interference is to determine the question of priority of adoption and use of the mark; and in such a case, when one of the parties has had no opportunity to offer testimony

as to whether the function of the mark is to describe a specific article made under a patent issued to him, and not to indicate origin, it is erroneous for the Commissioner to refuse to register the mark on that ground. (Following *Giles Remedy Co.* v. *Giles*, 26 App. D. C. 375, and Distinguishing *Re Herbst*, 32 App. D. C. 269.)

2. A grant by a patentee of the right to manufacture and sell under his patent, with a reservation to the patentee of the right to use, is the grant of a license, and not an assignment of the patent, and does not deprive the patentee, as against the licensee, of the right to register a trademark as applied to the patented articles.

3. Abandonment, being in the nature of a forfeiture, must be clearly and convincingly proved by the one alleging it. The question of abandonment must be decided upon the facts of the particular case; and a mark used as a trademark will never be held abandoned, unless a clear intention to do so appears.

4. Where, in a trademark interference involving the use of the word "Savory" as applied to roasting pans, it appeared that after one of the parties had manufactured and sold roasting pans under that name, and had been granted a patent on pans of the same general character, he granted to the predecessor of the other party a license to manufacture and sell under the patent, in return for royalties on the articles sold, it was *held* he had not abandoned the right to claim and register the mark as a trademark.

No. 623.    Patent Appeals.    Submitted March 8, 1910.    Decided April 6, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference proceeding.

*Reversed.*

The facts are stated in the opinion.

*Messrs. Alexander & Dowell* and *Mr. Arthur E. Dowell* for the appellant.

*Mr. L. S. Bacon, Messrs. Rogers, Locke, & Babcock, Messrs. Geyer & Popp,* and *Messrs. Bacon & Milans* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding, which affirmed the decision of the Examiner of Interferences, refusing registration to appellant of the word "Savory" as a trademark for baking or roasting pans.

Appellee, The Republic Metalware Company, filed its application for registration of the mark in question on October 18, 1907, which was granted March 10, 1908. Appellant, Joseph Mathy, filed his application June 9, 1908.

It appears from the record that appellant applied in 1888, and again in 1894, for letters patent on pans of the same general character as the one upon which the mark is now used, which applications were rejected by the Patent Office, and that, in March, 1898, he filed another application, which matured into a patent on July 19, 1898. The evidence of appellant is to the effect that he adopted the mark here in question as early as 1891. Between that time and the end of 1897 he sold about one hundred pans, which were made entirely by hand, after which later date he had "a cheap die made, and sold many more."

On August 8, 1898, he entered into a contract with the Sidney Shepard Company, wherein it was agreed that the company should have the exclusive right, with the exception of appellant, to manufacture and sell the roasting pans embodied in the letters patent, appellant orally suggesting the desirability of designating the pans by the mark he had previously used. The Sidney Shepard Company was succeeded by the appellee in November, 1905. Appellant, on February 3, 1906, renewed the license and executed a new agreement with appellee, which, in substance, provided that the appellant "does hereby license, empower, and grant to said second party, its successors and assigns, the exclusive right (except as hereinafter stated) to manufacture and sell the said roasters in the United States for the full term of said patent, and agrees not to empower or license any other parties in the United States to manufacture

or sell said roasters during the continuance of this agreement. But it is mutually agreed that the said party of the first part shall have the right to make and sell said roasters in an experimental way, or in any territory not covered by said Republic Metalware Company;" that the appellee would pay certain royalties to the appellant; that "the party of the first part may terminate this agreement if the party of the second part shall default in the payment of royalties as herein provided, or if the royalties paid to him by said party of the second part shall be less than $2,500 in the last preceding calendar year; or if the party of the second part changes the design or construction contrary to article III.;" and that, in the event of the termination of the license, the appellant should purchase from the appellee such tools and dies as were used in the manufacture of the invention embraced in the contract.

It does not appear that appellant manufactured roasters for sale after the date of the contract with the Sidney Shepard Company, although he continued to make them for experimental purposes until 1906.

The Commissioner of Patents refused to register the mark in question, on the ground that its function is to describe a specific article made under a certain patent, and not to indicate origin. This raises a question the decision of which must be limited to an *ex parte* proceeding. No one is interested in its determination but the appellant and the Patent Office. Appellee is in no position to urge the invalidity of a mark for which it has applied for and received a certificate of registration. The only purpose of an interference is to determine the question of priority of adoption and use. *Giles Remedy Co.* v. *Giles,* 26 App. D. C. 375. There was nothing in the proceedings to lead appellant to anticipate this objection to the registration of his mark, and his testimony was necessarily limited to the issue raised by the interference. He has had no opportunity to show that the mark has been used on pans differing from those manufactured under his patent. His testimony establishes that he used the mark as early as 1891. It may well be, so far as disclosed by this record, that the pans made at that time were

substantially different in construction from those now being placed on the market,—especially in view of the fact that the Patent Office rejected his applications of 1888 and 1894, and allowed that of 1898. If they be the same, then his patent must be void. Therefore this question is not a proper one to be considered in this proceeding.

There is nothing in this holding inconsistent with that in *Re Herbst,* 32 App. D. C. 269. There, there were three parties to an interference, one of whom was the appellant Herbst. On hearing, it developed that a fourth party had adopted and used the mark prior to the earliest date established by any of the applicants. All of the applicants were thereupon refused registration, which decision was affirmed by the Commissioner. Herbst then applied to the Examiner of Trademarks for the registration of his mark, which application was refused, and on appeal that ruling was sustained by this court. In that case the same record was presented for the consideration of the *ex parte* matter as was considered by the Commissioner in the interference. In both proceedings the question of priority of adoption and use was manifestly the only one in issue, and all of the evidence taken bore directly on that point. All of the facts necessary for a determination of the *ex parte* question were before the Commissioner on the hearing of the interference, and the decision there given could work no injustice to any of the parties. Hence the ruling in that case can have no application to a case like the present, where one of the parties has had no opportunity to offer testimony on the point decided.

We now come to the question of priority of adoption and use. It is admitted that appellant was the first to apply the mark to roasting pans, and it is also admitted that appellee's predecessor began the use of the mark at the suggestion and with the consent of appellant. But it is contended on behalf of appellee that the agreement between appellant and appellee amounted, in effect, to an assignment of the patent rights, and that appellant has no longer any interest in the patent or in the article manufactured thereunder. This contract, however, can be construed to be nothing more than a mere license. It

granted to appellee only the right to manufacture and sell. The right to use was retained. "The exclusive rights secured by a patent are the right to make, the right to use, and the right to vend the invention it protects. A grant, transfer, or conveyance of these exclusive rights throughout the United States, or a grant of an undivided part of these exclusive rights, or a grant of these exclusive rights throughout a specified part of the United States, is an assignment of an interest in the patent, by whatever name it may be called. A grant, transfer, or conveyance of any right or interest less than these is a license." *Paulus* v. *M. M. Buck Mfg. Co.* 64 C. C. A. 162, 129 Fed. 594.

Prior to the date of appellant's contract with appellee's predecessor in business, appellant had manufactured a number of roasting pans which he had sold under the name of "Savory." These pans had become known to the trade, and were purchased by customers by that designation. Appellant, therefore, before the use of the mark by appellee or its predecessor, had acquired a property right therein, of which he could only be devested by strict proof of its abandonment. Abandonment being in the nature of a forfeiture, it is incumbent upon the person alleging it to prove by clear and convincing evidence that the right claimed has been relinquished. The question of abandonment must be decided by the facts in each particular case; but a mark will never be held abandoned, unless a clear intention to do so appears. In *Saxlehner* v. *Eisner & M. Co.* 179 U. S. 19, 45 L. ed. 60, 21 Sup. Ct. Rep. 7, where the question of abandonment was raised in a case of unfair competition, the court said: "To establish the defense of abandonment, it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. Acts which, unexplained, would be sufficient to establish an abandonment, may be answered by showing that there never was an intention to give up and relinquish the right claimed. * * * And in a recent English case this doctrine has been applied to a case of trademarks." And in Browne on Trademarks, 2d ed. § 681, it was said: "As to the lapse of time that could justify an in-

D. C.]                    Opinion of the Court.

ference of abandonment, it has been judicially said that no statute of limitations bars one from protection of his trademark. On this point are many decisions, alike in principle, although varied with circumstances. In one case, a lapse of twenty years was held to be no bar; in another case, ten years; in another case, nine years."

Appellee, under its contract with appellant, agreed to pay him, in return for the privilege of making and vending, certain royalties on the articles sold. It was therefore to appellant's interest to use every means in his power to increase the sale of the patented articles, and to make them popular with the trade. His roasters had become known by means of his mark, and it was but natural for him to desire that they continue to be so designated. That he found it more advantageous to purchase the articles from appellee company than to manufacture them himself cannot destroy the rights he had already acquired. His interests simply demanded that pans be placed on the market manufactured under his patent and designated by his mark. This, with appellant's consent and approval, the appellee company was doing. The invention was being offered to the public in the manner originally adopted by appellant, and in the manner he would have the right to use should he desire to manufacture after the patent had expired, or to the extent permitted under the contract, or in case the license was revoked as provided therein. His interests were so closely connected with those of the appellee that he was actively engaged in assisting that company, even to the extent of contributing toward the expense of advertising the "Savory" roasters. In no sense do we think that the contract with appellee can be construed as an assignment of the patent, or as an abandonment by appellant of his right to claim the trademark adopted by him long prior to the date of the contract. To award to appellee company the exclusive right to the use of a mark which originated with appellant, who consented to its use by appellee company only for the purpose of better protecting his interests under the license, which award would carry with it the exclusive right to the use of the mark on appellant's invention after the patent

had expired, and also the right to use it on other goods of the same descriptive qualities, would be manifestly unjust.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required. *Reversed.*