35 C.C.P.A.(Patents)

## E. I. DU PONT DE NEMOURS & CO. v. CELANESE CORPORATION OF AMERICA.

### Patent Appeals No. 5360.

Court of Customs and Patent Appeals. April 2, 1948.

Rehearing Denied April 30, 1948.

O'CONNELL, Associate Judge, dissenting.

Stone, Boyden & Mack, of Washington, D. C. (J. Hanson Boyden of Washington, D. C., of counsel) for appellant.

C. W. Levinson and I. Seltzer, both of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark cancelation proceeding from the decision of the Commissioner of Patents, 69 U.S.P.Q. 258, affirming the decision of the Examiner of Interferences granting appellee's motion to dismiss appellant's petition to cancel the registration of appellee's mark "Celanese," with the word "Brand" enclosed in smaller letters within the term "Celanese," for use on dyestuffs.

Appellee's trade-mark, registration No. 189,399, was registered September 16, 1924, under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., on an application filed April 15, 1924, by the American Cellulose & Chemical Manufacturing Company, Limited, which, by change of its name later, became the Celanese Corporation of America, a corporation organized under the laws of the State of Delaware. The registration was renewed September 16, 1944, to the Celanese Corporation of America.

On October 26, 1944, appellant, E. I. du Pont de Nemours & Company, filed its petition for cancellation of appellee's registered mark, in which it was claimed that on April 2, 1935, appellee had entered into a non-exclusive license with American Aniline Products, Inc., of New York, New York, granting to the latter company " 'a non-exclusive license to employ said trade mark in connection with dyestuffs' and 'the right—to publish advertising matter—in connection with the sale of dyestuffs, to the effect that such dyestuffs are designated by said trademark' "; that in accordance with said license agreement, American Aniline Products, Inc., "published from time to time, beginning in the year 1935, and running at least through the year 1943, numerous displays of advertising matter, such advertising matter appearing in the following periodicals (among others), namely:— 'American Drycleaner,' 'American Dyestuff Reporter,' 'Cotton,' 'Rayon Textile Monthly,' and 'Textile Colorist,' " and in such advertisements, featured dyestuffs offered under the name "Celanese"; that said products under said trade-mark were advertised as the product of American Aniline Products, Inc., without any reference in any way to appellee; that it filled the orders received for dyestuffs and placed on such dyestuffs labels bearing the trade-mark and displayed its own name as the source of the goods "Celanese" and shipped such labeled goods directly to purchasers; that the trade-mark "Celanese" no longer served to denote origin in appellee and therefore, the trade-mark "Celanese," as applied to dyestuffs, has ceased to function as a trademark; and that appellee's registration has, therefore, been abandoned and is invalid.

Appellant further alleged, in order to establish that it deemed itself injured by the registration of appellee's trade-mark, that appellee had relied on its registration in a cancelation proceeding against appellant's registration No. 365914, for the mark "Zelan" by reasons of which cancelation proceeding appellant has been "grievously harrassed and otherwise seriously injured."

Subsequent to the filing of appellant's petition for cancelation, appellee, on November 10, 1944, filed a motion under Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requiring appellant to furnish appellee with a further and better statement of appellant's claims. Attached to the motion was a license agreement dated April 2, 1935, between the Celanese Corporation of America and American Aniline Products, Inc., designated as Exhibit A, together with photostat copies of two advertisements of American Aniline Products, Inc., appearing in Volume 32 of the American Dyestuff Reporter of April 26, 1943, and in Volume 10 of the American Drycleaner of Novem-

ber 1943, each respectively referred to in the motion as Exhibits B. and C.

Without quoting the entire agreement between appellee and American Aniline Products, Inc., it is stated therein that American Aniline Products, Inc., was desirous of selling dyestuffs under the trade-mark "Celanese"; that it agreed "to acknowledge and does hereby acknowledge the validity" of the trade-mark "Celanese," and "further agrees that it will never do anything or use" the trade-mark "Celanese" "in any way to infringe the rights" of appellee in its trade-mark. It is further stated in the license agreement that American Aniline Products, Inc., was granted "a non-exclusive, non-transferable and personal license" to employ the trade-mark "Celanese" "in connection with dyestuffs and no other product"; that American Aniline Products, Inc., was appointed as one of appellee's agents "for the purpose of affixing labels bearing" the trade-mark "Celanese" to "packages containing said dyestuffs"; that American Aniline Products, Inc., agreed to attach such labels "only to dyestuffs manufactured by it and only so long as the right granted herein has not been terminated as provided in Clause 6 under this agreement"; and that "Nothing herein contained shall be construed to mean" that American Aniline Products, Inc., "has the sole and exclusive right to use" the trade-mark "Celanese" and appellee reserved the right to use said trade-mark and to appoint other agents to use the same.

It further appears from the license agreement that it was agreed that the trade-mark should be employed by American Aniline Products, Inc., "to designate only such dyestuffs which shall in quality be up to such standard as may be fixed or approved by the party of the first part and that for the purpose of ascertaining the quality of said dyestuffs," appellee "shall through such agents or representatives as it may designate, have the right to inspect and test from time to time, such dyestuffs before they are offered for sale"; that American Aniline Products, Inc., might publish in circulars or other advertising in connection with the sale of dyestuffs "to the effect that such dyestuffs are designed by" the trade-mark "Celanese" "until such time as the right granted herein has not been terminated as provided in Clause 6 under this agreement"; that notice of the fact that the trade-mark "Celanese" was registered and owned by appellee should be indicated in all such advertising matter and that before such advertising matter was published it should be submitted to appellee for its approval; and that in Clause 6 of the agreement, it is provided that the license agreement may be terminated by appellee upon six months notice in writing to the second party.

In Exhibit B, published by American Aniline Products, Inc., it appears that the trade-mark "Celanese" was merely used to indicate to the public a particular type or quality of dye.

Exhibit C is an advertisement of American Aniline Products, Inc., in which it stated, among other things, that Celanese dyes might properly be used for the purpose intended.

On November 24, 1944, appellant, in response to the motion filed by appellee under Rule 12(e) of the Federal Rules of Civil Procedure, acknowledged the existence of Exhibits A, B, and C, hereinbefore referred to, and stated that there were other advertisements similar to Exhibits B and C and particularly referred to a copy of an advertisement in the American Dyestuff Reporter of July 15, 1935, and apparently attached the same to its bill of particulars. That advertisement, however, does not differ substantially from Exhibits B and C, hereinbefore referred to, and does not indicate that American Aniline Products, Inc., is the owner of the trade-mark "Celanese."

On December 11, 1944, appellant moved to amend its petition for cancellation by adding thereto the allegation that American Aniline Products, Inc., with the knowledge and approval of appellee, "issued and distributed to the trade color books or 'cards' illustrating various shades of 'Celanese' colors or dyestuffs which were being offered, such color books or 'cards' bearing only the name American Aniline Products, Inc., as the source of the 'Celanese' dyestuffs described therein" and displayed its own name as a source of the dyestuffs.

The motion to amend was granted by the Examiner of Interferences and appellant was granted until January 4, 1945, in which to furnish the particulars requested in appellee's motion hereinbefore referred to.

Appellee, on December 12, 1944, filed an additional motion under Rule 12(e) of the Federal Rules of Civil Procedure, to require appellant to file an additional bill of particulars.

On December 30, 1944, appellant, in response to the second motion for a bill of particulars, attached two photostat copies of the covers of color books or "cards" and stated further that the original books from which the attached photostats had been made, might be examined either in Room 7090 of the du Pont Building, Wilmington, Delaware, or in Room 866 of the National Press Building, Washington, D. C.

The two photostat copies attached to the bill of particulars refer to Celanese colors but do not indicate to the purchasing public that the trade-mark "Celanese" is owned by American Aniline Products, Inc., but rather suggests that the Celanese colors are of a particular quality.

The sole issue in the case, therefore, in accordance with the facts as stated is whether appellant's petition for cancelation, the record not containing any other matter of which we may take judicial notice, is sufficient to state a cause of action in accordance with section 13 of the Trade-Mark Act of February 20, 1905, in view of appellee's motion to dismiss the petition for cancellation, the bills of particulars, and the exhibits attached thereto.

The Examiner of Interferences, in a rather lengthy opinion, in which he cited, among others, the cases of E. F. Prichard Co. et al. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512; Socony-Vacuum Oil Co., Inc. v. Atomol Mfg. Co., 58 U.S.P.Q. 497, and Smith v. Dental Products Co., Inc., et al., 7 Cir., 140 F.2d 140, held that appellant's petition for cancelation should be dismissed in accordance with appellee's motion. In his decision, the examiner distinguished the case of R. M. Hollingshead Corp. v. Davies-Young Soap Co., 121 F.2d 500, 28 C.C.P.A., Patents, 1286, from the facts in the instant case, reference to which will hereinafter be made.

On appeal, the Commissioner of Patents affirmed the decision of the Examiner of Interferences and in support of his decision cited the cases of Smith v. Dental Products Co., Inc., et al., supra, and Mathy v. Republic Metalware Co., 35 App.D.C. 151. The commissioner also referred to the cases of Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 8 Cir., 113 F. 468, and Mayer Fertilizer & Junk Co. v. Virginia-Carolina Chemical Co., 35 App. D.C. 425.

It is unnecessary that we recite all of the statements contained in the commissioner's decision. It is sufficient to say that he stated that it was well settled that one who assigns his trade-mark with or without the business with which it has been' used, abandons his mark, but that a license agreement, not merely a naked license to use, where the licensor expressly reserves his right to continue the use of the mark and which license agreement provides that the agreement may be terminated by the licensor, is not an abandonment of its registered mark.

In the case at bar, it clearly appears from the license agreement that the licensee agreed to use the trade-mark on such dyestuffs only as were of the quality and of the standard as might be fixed or approved by the licensor, and that the licensor might, through its agents or representatives, have the right to inspect and test from time to time the dyestuffs made by the licensee. The license agreement further provided, as hereinbefore noted, that the licensor reserved the right to use said trade-mark and to appoint other non-exclusive agents for the use thereof; that American Aniline Products, Inc., acknowledged the validity of appellee's registered trade-mark and that it would not do anything in any way to infringe the rights of appellee. The agreement further provided that it might be terminated by appellee by giving six months notice in writing to the licensee. There is nothing in the license agreement to indicate that appellee had abandoned its mark for use on its dyestuffs. On the

contrary, it clearly appears from the agreement that it retained not only its right to use, but its full ownership of the trade-mark, subject to the right of American Aniline Products, Inc., to manufacture appellee's dyestuffs in accordance with the quality and standard required by appellee. It is obvious, therefore, that the license agreement is not a naked license agreement, and that appellee has not abandoned its mark within the purview of section 13 of the Trade-Mark Act of February 20, 1905, as argued by counsel for appellant.

It is noted in the petition for cancellation, as hereinbefore stated, that contrary to the license agreement, American Aniline Products, Inc., did not, at least in some instances, comply wtih the terms of the contract in that it advertised its dyestuffs under the trade-mark "Celanese," apparently as the source of such dyestuffs, without reference in any way to appellee.

When it filed its bills of particulars in accordance with the motions by appellee, appellant referred to Exhibits B and C, hereinbefore set forth, as conforming to its allegation that American Aniline Products, Inc., advertised its dyestuffs as though the "Celanese" trade-mark was its own. It failed, however, to introduce into the record any other advertisements by American·Aniline Products, Inc., differing substantially from Exhibits B and C, hereinbefore referred to, but reserved the right to introduce evidence of other advertising which it claimed was contrary to the contract, if such advertising specimens were later discovered.

We have examined Exhibits B and C attached to appellee's motion under Rule 12(e) of the Federal Rules of Civil Procedure, and are of opinion that neither of those exhibits indicates in any way that American Aniline Products, Inc., was the owner of the trade-mark "Celanese" and the only matter of importance appearing in those exhibits is that the Celanese dyes therein referred to indicated quality and were manufactured by American Aniline Products, Inc. That, we think it had a perfect right to do and that such advertising does not indicate in any way that appellee abandoned, or intended to abandon its registered trade-mark "Celanese." It is true

that Exhibits B and C do not state that the trade-mark "Celanese" is registered and owned by appellee, and to that extent American Aniline Products, Inc., violated the terms of the license agreement.

In view of the fact that appellee filed a motion to dismiss, it acknowledged that, at least as to Exhibits B and C, American Aniline Products, Inc., violated that portion of the license agreement. However, there is no statement alleged in the petition for cancelation that either the public or anyone else was deceived by the failure of American Aniline Products, Inc., to comply with that portion of the terms of the license agreement. Furthermore, there is no allegation that the other terms of the agreement were not fully carried out by each of the parties to the license agreement.

Counsel for appellant has cited several cases to the effect that the primary object of a trade-mark is to indicate origin, as well as the product of a particular trader and that appellee, having entered into a license agreement, has voluntarily divested itself of the exclusive use of the mark; that appellee could not register the mark in view of the license agreement and, therefore, has abandoned the mark within the purview of section 13 of the Trade-Mark Act of February 20, 1905.

One of the cases relied on by counsel for appellant is that of R. M. Hollingshead Corp. v. Davies-Young Soap Co., supra. That case involved an opposition proceeding between the parties to a contract in which appellee opposed the registration of the mark "Whiz" to appellant. It appeared that appellant in that case had entered into a contract with appellee in which it voluntarily relinquished its exclusive right to the use of the mark upon grit paste soap and, for the reasons therein stated, was not entitled to the exclusive use of the mark and, therefore, not entitled to register the same under the Trade-Mark Act of February 20, 1905. It is true that in our decision in that case we quoted from Nims on Unfair Competition and Trade-Marks, Third Edition, section 22, page 68, that " '* * * A lease or license of a mark apart from its business with which it is used, constitutes an abandon-

ment of the mark and rightfully so.'" No cases were cited in support of the quoted statement. It is significant that if the quoted statement should be interpreted literally, it is contrary to decisions hereinafter cited. A similar statement appears in Nims on Unfair Competition and Trade-Marks, Fourth Edition, section 22, page 123, and cases are cited in support of the author's statement. However, we have examined all of the Federal cases there involved and find that they are not in point. The author also states that: "Nevertheless, a trade-mark or trade name may be the subject of a lawful and valid license or lease, even as it may be legally sold. 'A trade name, like a trade-mark, may be assigned, as long as it remains associated with the same product or business with which it has become associated in the public mind. * * * And upon the same conditions it may be licensed or lent, and its exclusive use may be resumed by its owner according to the terms of the lending.'"

Attention is also called by the author, in a footnote to section 22, page 123, to section 408, page 1264, where it is stated, relating to abandonment, that

"'Abandonment in industrial property is an act by which the public domain originally enters or re-enters into the possession of the thing (commercial name, mark or sign), by the will of the legitimate owner. The essential condition to constitute abandonment is that the one having a right should consent to the dispossession. Outside of this there can be no dedication of the right, because there cannot be abandonment in the juridical sense of the word.' Abandonment results in a forfeiture and must be strictly proved, and the burden of its establishment is upon the party affirming it.

■ "Abandonment is purely a question of intent.

"In 1915, the Supreme Court said that 'trade-mark rights, like others that rest in user, may be lost by abandonment, non-user, laches or acquiescence. Abandonment, in the strict sense, rests upon an intent to abandon; and we have no purpose to qualify the authority of Saxlehner v.

Eisner [179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60] to that effect.' [Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713.]

. "The rule that intention governs abandonment, is not disputed. When conduct is consistent with the intention to retain trade-mark rights, or when acts which unexplained might establish abandonment are answered by affirmative proof that there never was an intention to give up the right claimed, abandonment is not established."

That that quotation is an accurate statement of the law cannot seriously be challenged. Cases were cited in support thereof.

■ It is well settled that the owner of a trade-mark may license its use to another and others so long as such agreements are not merely naked license agreements. See Menendez v. Holt, 128 U.S. 514, 524, 9 S. Ct. 143, 32 L.Ed. 526; Bacardi Corporation of America v. Domenech et al., 311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98; Shaver et al. v. Heller & Merz Co., 8 Cir., 108 F. 821, 65 L.R.A. 878; Mathy v. Republic Metalware Co., supra; Saalfield Pub. Co. et al. v. G. & C. Merriam Co., 6 Cir., 238 F. 1; and E. F. Prichard Co. et al. v. Consumers Brewing Co., supra.

In the case of Smith v. Dental Products Co., Inc., et al., supra, the court, among other things, there said [140 F.2d 146]: "Again defendant relies upon authorities such as Hanover Star Mill Co. v. Metcalf, supra [240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713], and United Drug v. Theodore Rectanus, supra [248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141], which, in our judgment, are not controlling. This is so for the reason that in the instant case defendant's use was definitely limited by the agreements between the parties. In none of the authorities relied upon by the defendant has it been held that the owner of a trade-mark loses such ownership by the mere grant to another of the privilege of its use."

In the case of Mathy v. Republic Metalware Co., supra, the court clearly recognized that a proper license was valid.

It is true that in the case of Mayer Fertilizer & Junk Co. v. Virginia-Carolina Chemical Co., supra, the court stated that

"A trademark cannot be assigned, or its use licensed, except as incidental to a transfer of the business or property in connection with which it has been used" and, in support of the quoted statement, cited the case of Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., supra, in which case the sole issue was whether the naked *assignment* of the trade-mark was valid, and the court there properly held that a mark could not be assigned apart from the business and good will of the owner of the mark. Accordingly, in its statement in the case of Mayer Fertilizer & Junk Co. v. Virginia-Carolina Chemical Co., supra, the court was wrong in saying, as the issue was not presented, that a trade-mark could not be legally licensed without a transfer of the business or property and the good will thereof, and the holding in that case in connection to a proper license agreement was contrary to the decisions in the case of Mathy v. Republic Metalware Co., supra.

Although the case of Crown Fabrics Corp. v. American Viscose Corp., 145 F.2d 246, 32 C.C.P.A., Patents, 701, is not exactly in point, it does approve the rule that a proper license agreement is valid and does not indicate abandonment on the part of the owner of the mark.

It is unnecessary that we cite other cases in support of our holding that a trade-mark registration may be licensed in accordance with the license agreement hereinbefore set forth. We are of opinion, therefore, that for the reasons hereinbefore stated, appellee has not abandoned its mark under section 13 of the Trade-Mark Act of February 20, 1905. It is unnecessary, therefore, that we consider the applicability of the Trade-Mark Act of July 5, 1946, effective July 5, 1947, 15 U.S.C.A. § 1051 et seq.

For the reasons hereinbefore stated, the decision of the Commissioner of Patents should be and is, accordingly, affirmed.

Affirmed.

BLAND, Associate Judge, sat during the argument of this case, but resigned before the opinion was prepared.

O'CONNELL, Associate Judge (dissenting).

The subject matter of the appeal nowise involves the issue that a proper license agreement is valid and does not indicate abandonment on the part of the owner, since appellant from the outset of the proceedings heretofore begun in the Patent Office has consistently prosecuted its petition upon the basic principle that where the mark is used in no such manner as to cause the mark to lose its significance as an indication of origin and to deceive the public, the owner thereof may authorize others, including subsidiaries and those who are completely independent, to legitimately use the mark on goods produced under his supervision and control or, in other words, without effecting its abandonment.

By the specific terms of the license agreement, the Aniline Corporation was granted a "personal license" and was to act as "one" of appellee's agents "for the purpose of affixing labels" bearing the trademark Celanese to packages containing the said dyestuffs, and no other product, manufactured by "Aniline" and by it sold to the public. The agreement further contemplated the additional use of appellee's mark by such "other agents" as appellee might appoint for the same or other purpose.

The Aniline Corporation was to have the right on its own account to publish in circulars and other advertising matter that its dyestuffs were designated by the trademark Celanese, and, to protect itself, appellee reserved the right to veto all such circulars and advertising matter, which were first to be submitted to appellee and by it approved in writing prior to the circulation and distribution thereof. Appellee specifically reserved the further right to inspect at any time the quality of "Aniline's" dyestuffs marketed by it under the name Celanese, and to terminate the license "upon six (6) months notice in writing."

There is no evidence before the court, however, and there was none before the tribunals of the Patent Office, that these rights were actually exercised by appellee, as appellee filed no answer and took no testimony but elected to rely solely upon its motion to dismiss.

The primary issue therefore involves the sole and elementary question raised by the

pleadings of whether the registration of the mark Celanese is invalid and has become abandoned because that name, by reason of the described license agreement and appellee's conduct in connection with the performance thereof, no longer constitutes a means whereby the goods of appellee may be distinguished from goods of the same class marketed by other vendors under the provisions of the Act of 1905.

The examiner in his dismissal of appellant's petition, it will be noted, relied primarily upon the case of Mathy v. Republic Metalware Company, 35 App.D.C. 151. In addition to the Mathy case he cited, among others, the case of Smith v. Dental Products Co., Inc., et al., 7 Cir., 140 F.2d 140.

The commissioner in reaching the identical conclusion relied upon the Mathy case; but in further support of his position quoted the excerpt from the opinion in the Smith case which is accurately quoted also in the prevailing opinion, and to which appellant has offered no objection as a correct statement of the law applicable to the facts recited in the Smith case.

The Commissioner of Patents correctly stated the established rule of evidence that the action of an owner who assigns his mark to another for use on goods of the same descriptive properties, and apart from the business with which the mark has been used, thereby effects the abandonment of his mark; and no proof whatever of his clear intent to do so is further required from the person alleging such abandonment, "because the assignment is conclusive evidence of his [assignor's] intent to abandon."

Appellant has contended and here contends that the identical rule of evidence applies to one who has likewise licensed his mark, and·relies upon the holding to that effect by this court in the Hollingshead case, supra, and upon other citations or holdings to the same effect by courts throughout the nation, including the Supreme Court of the United States.

The commissioner overruled appellant's contention on the ground that one who licenses his mark without the business with which the mark has been used does not thereby abandon the mark, and that

such a license does not constitute conclusive evidence of an intent to abandon the mark, where the licensor reserves his own right to continue the concurrent use of the mark, and the license granted is nonexclusive and subject to termination by the licensor. This court in the prevailing opinion has approved and ratified that decision.

It is not deemed important to quote the text of the well-known provisions of the sections of the Act of 1905 which are here involved, but it is important to note that in addition to sections 5 and 13, sections 2 and 12 of the act have a bearing on the issue.

What Congress had in mind in the enactment of sections 2 and 5 was the clear and obvious intent to prohibit the registration of a trade-mark calculated to deceive the public with respect to the origin of goods by reason of the fact that the applicant for registration did not have the right to the exclusive use of the mark on goods of the same descriptive properties at the date of his application for registration. In re Laskin Brothers, Inc., 146 F.2d 308, 32 C.C.P.A. Patents 820; Crown Fabrics Corporation v. American Viscose Corporation, 145 F.2d 246, 32 C.C.P.A., Patents, 701. In the enactment of section 12, Congress provided in effect that an existing registration which has not become abandoned shall be renewable upon request by the registrant or his successors in interest.

However, the action of appellee whereby it voluntarily divested itself of the right to the exclusive use of its mark apart from the business with which the mark has been used, and caused the mark to be used by another on identical goods, constituted an abandonment of the mark within the purview of section 13 of the Act of 1905. R. M. Hollingshead Corp. v. Davies-Young Soap Co., 121 F.2d 500, 28 C.C.P.A., Patents, 1286, 1292; Everett O. Fisk & Co., Inc., v. Fisk Teachers' Agency, Inc., et al., 8 Cir., 3 F.2d 7, 9; McKesson & Robbins, Inc., v. Charles H. Phillips Chemical Co., 2 Cir., 53 F.2d 342 and 1011; Chas. H. Phillips Chemical Co. v. McKesson & Robbins, 285 U.S. 552, 52 S.Ct. 407, 76 L.Ed. 942. See also American Photographic Publishing Co. v. Ziff-Davis Publishing Co., 127

F.2d 308, 29 C.C.P.A., Patents, 1014; In re La Monte & Son, 146 F.2d 302, 32 C.C.P.A., Patents, 806, 808; E. F. Prichard Co. et al. v. Consumers Brewing Co., 6 Cir., 136 F.2d 512.

The examiner in the present case found "that in a number of instances, at least," American Aniline Products, Inc. had not complied with the condition contained in the agreement with respect to giving notice in advertisements of appellee's ownership of the mark Celanese. On this point, the examiner held that failure by appellee's licensee to observe that specific condition of the agreement "could not well enlarge the limited right of use granted the licensee in the agreement."

On the same point, the commissioner held: "Contrary to this latter provision of the license agreement, *it appears that the licensee has frequently advertised the mark without reference to respondent's ownership,* and without respondent's approval. But it seems to me that this constitutes nothing more than a breach of contract on the part of the licensee, *which may hardly be said to work an abandonment of its trade-mark rights by respondent, or to evidence* an intent to abandon." (Italics not quoted)

In rendering those decisions the tribunals of the Patent Office entirely overlooked the predominant fact that such frequent breach of the agreement by appellee's licensee constituted a series of acts each and all of which would be likely to deceive the public as to the origin of the goods. This is doubly true in the case at bar because "Celanese" is not only the appellee's trademark but also the appellee's corporate name. Moreover, those decisions completely disregarded the admitted fact that at least a portion of such advertising material was circulated by the Aniline Corporation over a period of years with "the knowledge and approval" of appellee.

In any event the question of such advertising, while important, as an element of deceit, is not in itself of controlling influence herein. The tribunals of the Patent Office had the false conception that the situation in the instant case, as explained by the examiner, "in its essentials is identical with that involved in the Mathy case, supra." The situation in the Mathy case, in its essentials, is identical with that involved in the Smith case but not with those essentials involved in the instant case.

The situation in each of those two cases in the court of equity discloses that the marketed merchandise during the existence of the license agreement had but the one source of origin in the licensor and no other person, that the mark was used in no such manner as to deceive the public, and that those two decisions were rendered in accordance with the accepted rule of law that, as against his licensee, the owner of a trade-mark does not lose such ownership by the mere grant of the privilege of the use of the mark by his licensee in connection with the owner's business when the goods are produced under his supervision and control. No such situation exists in the case at bar.

The Commissioner of Patents referring to the Smith and Mathy cases properly stated in his decision that "In each of those cases it was held that a license from the original proprietor to use a trade-mark did not result in abandonment, and the exclusive rights of the licensor were restored upon termination of the license."

In making such a statement the commissioner failed to consider, however, that in restoring the mark to the licensor, the court in each of those two cases held that the goods were produced under the owner's supervision and control, and properly applied the law that a trade-mark in order to be a valid one must indicate origin of the goods in a particular vendor and that the mark cannot be assigned or its use licensed apart from the business with which the mark is used.

Appellant here, as in the Patent Office, asserted and relied upon the authority of the Hollingshead case. With reference thereto appellee submits the following criticism in its brief: "The appellant appears to believe that the mere granting of a license constitutes an abandonment of the mark, and relies on the quotation to that effect in R. M. Hollingshead Corp. v. Davies-Young Soap Co., 121 F.2d 500, 28 C.C.P.A.Patents, 1286. It is pointed out that

this is merely dictum and was not required for a decision of the case which was decided on the basis of a contract between the parties directly involved in the case and not on the basis of a contract with a third party as is involved in the present case. The Examiner of Interferences shows fully the irrelevance of this decision (R. 30). * * *"

The basic issue in the Hollingshead case was the validity of the appellant's existing trade-mark, by virtue of the license agreement therein set forth, and was there raised in an opposition proceeding. The court, as properly stated in the opinion, might have affirmed the decision appealed from on that ground alone, and thereby required that the issue be deferred and decided in a cancelation proceeding as provided by section 13 of the Trade-Mark Act of 1905. The court, however, was not content to rely upon that procedure and decided the issue on its merits, as had been done in that case by the tribunals of the Patent Office.

With reference to appellee's quoted criticism it is noted that appellant has nowhere contended or evinced a belief that the granting of a proper license constitutes an abandonment of the mark, nor has it relied "on the quotation to that effect" in the Hollingshead case, for there is no quotation to that effect in that case. That quotation together with other pertinent facts of the case are recited in the prevailing opinion herein.

The court there correctly held, in effect, and by a unanimous decision, that a license of a mark for use, as in the present case, on a particular product, and no other, apart from the business with which the mark had been used, constituted an abandonment of the mark and rightfully so. Furthermore, the invalidity of appellee's trade-mark in the present case, as in the Hollingshead case, is challenged by appellant on the basis of a contract between the parties directly involved in the agreement.

The irrelevance of the decision in the Hollingshead case by no means has been shown by the Examiner of Interferences or anyone else. The examiner's decision was that in the instant case the agreement between the parties "* * * does not purport to acknowledge the possession of an exclusive right in the mark by other than the respondent [appellee]; and the doctrine enunciated in R. M. Hollingshead Corp. v. Davies-Young Soap Co., supra, is therefore deemed to have no bearing upon the question of respondent's [appellee's] right of registration."

That decision by the examiner ignored the fact conceded by appellee from the outset, that it had no right to the exclusive use of the mark under the agreement and that appellee had thereby granted its concurrent use to another for identical goods. Appellee in its brief here states "* * * In the present case, appellee was not entitled to stop use of its trade mark by American Aniline, since it was granted a license."

In this connection, it will be noted that six months must elapse under the actual terms of the agreement before appellee's intent to terminate the agreement could possibly take effect.

While the facts are varied, the principle of law applied by this court in refusing the registration of the mark in the La Monte case hereinbefore cited is applicable in the present case to the effect that the exclusive use of a trade-mark is to indicate origin, and when the mark loses that distinguishing feature, it is considered an invalid mark. Furthermore, in the Fisk case hereinbefore cited, which presents a state of facts quite similar to those in the instant case, the court upon the basis of a wide accumulation of competent authority held that the abandonment of a trade-mark may be inferred from circumstances evidencing the intention of the owner to discontinue the distinctiveness of the mark as indicating origin.

Appellant also asserted and relied upon the authority of other cases in the proceedings heretofore begun in the Patent Office. The commissioner stated with reference to two of such citations:

"Petitioner cites Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 113 F. 468, 51 C.C.A. 302, from which the Court of Appeals of the District of Columbia, in Mayer Fertilizer & Junk Co. v. Virginia-Carolina Chemical Co., 35 App.D.C. 425,

1910 C.B. 399, quoted the following statement:

" 'A trade-mark cannot be assigned, or its use licensed, except as incidental to a transfer of the business or property in connection with which it has been used.'

"The latter case did not involve a license, however; and it is interesting to note that the decision was rendered less than two months after the decision in the Mathy case, supra, and that both were written by the same judge. And in the opinion from which the quoted language was taken, it may properly be characterized as dictum."

In thus noting with interest that the decision in the Mayer case was rendered less than two months after the decision in the Mathy case and both opinions were written by the same judge, the commissioner failed to note that the judge who wrote both opinions applied the same doctrine in his disposition of the Mathy case that he quoted from the Macmahan Pharmacal Co. case. Moreover, this court, in effect, has recently applied the doctrine in question in a case in which no assignment was involved. See In re Laskin Brothers, Inc., supra.

It has been held in any number of cases that the registration of an invalid or abandoned trade-mark cannot be maintained in a cancelation proceeding against a party who deems himself injured or subject to further injury by the maintenance of such registration. See American Photographic Publishing Co. v. Ziff-Davis Publishing Co., supra; Penetrene Corp., etc., v. Plough, Inc., 121 F.2d 539, 28 C.C.P.A.,Patents, 1307, 1312; McKesson & Robbins, Inc., v. Charles H. Phillips Chemical Co., supra; R. M. Hollingshead Corp. v. Davies-Young Soap co., supra.

Therefore, since appellee's mark admittedly no longer serves to indicate origin of the described dyestuffs solely in appellee, and since appellant is deemed injured by appellee's registration, under the provisions of section 13 of the Trade-Mark Act of 1905 and the authorities hereinbefore cited, appellant obviously was entitled to prevail in the proceedings it had heretofore begun in the Patent Office on the ground that appellee's mark has become abandoned.

The prevailing opinion cites no competent authority which constitutes any valid basis for the conclusion therein expressed to the effect that the doctrine of the Hollingshead case on the point here in issue is merely dictum and should be overruled. That is an erroneous action because, in addition to what has been hereinbefore stated, the doctrine of the Hollingshead case is based upon the universally accepted principle that where the mark is used in such manner as to cause the mark to lose its significance as an indication of origin and to deceive the public, such use effects the abandonment of the mark and its registration should be canceled. Appellee by its own admission has established the existence of the same situation in the case at bar, and in accordance with that principle and under the authorities hereinbefore cited, the decision of the Commissioner of Patents should be reversed. In view of that conclusion, it is deemed unnecessary to discuss herein other questionable points which have been made in the prevailing opinion.

With reference to the Act of July 5, 1946, which has taken force and effect since the decision was rendered by the Commissioner of Patents, it is my view that, contrary to appellee's contention, the provisions of section 5 of the new act may not be applied to the subject matter of the appeal for appellee's benefit, since such application is not otherwise specifically provided for in the act as required by section 46(a); and that the equitable principles of estoppel and acquiescence, as applied in the analogous situation in the Fisk case hereinbefore cited, should be applied by the court to the subject matter of the appeal for the benefit of appellant and against the appellee.

For the reasons hereinbefore stated, the decision of the Commissioner of Patents should be reversed.