**GEORGIA CARPET SALES, INC., Plaintiff,**

v.

**SLS CORP., Defendant.**

**No. 92 C 1325.**

United States District Court, N.D. Illinois, E.D.

Feb. 27, 1992.

Daniel Hefber, Hefber & Radke, Chicago, Ill., for plaintiff.

MEMORANDUM ORDER

SHADUR, District Judge.

Georgia Carpet Sales, Inc. ("GCS") has filed a two-count Complaint against SLS Corp. ("SLS"), purporting to ground federal jurisdiction under Lanham Act, § 43(a), 15 U.S.C. § 1125(a) ("Section 1125(a)"), in Count I and then invoking the supplemental jurisdiction provisions of 28 U.S.C. § 1367 ("Section 1367") to advance a claim of violation of the Illinois trade name statute in Count II. Based on its initial review of the Complaint,[1] this Court sua sponte orders GCS's counsel to address a jurisdictional problem that appears on the face of the Complaint and its attached exhibits.

For current purposes this Court of course assumes the truth of GCS's allegations. GCS asserts itself to be the owner of the "Georgia Carpets" trade name (Complaint ¶ 2), which before May 25, 1978 had "acquired a secondary meaning in that the name came to symbolize to customers the business of GCS" (*id.* ¶ 5). On that date GCS entered into a written license agreement with SLS (Complaint Ex. A) that permitted the latter to use and display the "Georgia Carpets" trade name at SLS's business location at 1500 South Lake Street, Mundelein, Illinois. Complaint Ex. A expressly stated that the trade name was "on loan" to SLS for a $1 annual fee and that the owners (then GCS and a since-dissolved affiliated corporation) reserved an unconditional right of termination of the "use agreement."

Complaint ¶ 8 goes on to allege that about June 26, 1990 GCS notified SLS "of the revocation of the license to SLS to use the 'Georgia Carpets' trade name" (Complaint Ex. B). But despite that revocation SLS has continued to use the "Georgia Carpets" trade name (Complaint ¶ 8)—and it has kept doing that even in the face of a November 22, 1991 letter from GCS's lawyers threatening legal action (*id.* ¶ 9).

Where GCS appears to run into trouble, even on its own allegations, is in the nature of the license that it initially granted to SLS. It is true that actions for trade name infringement, like those for trademark infringement, may be advanced under the Lanham Act's federal version of unfair competition embodied in Section 1125(a)—see, e.g., *Walt–West Enterprises, Inc. v. Gannett Co.*, 695 F.2d 1050, 1054 n. 6 (7th Cir.1982). If then GCS had retained a federally enforceable property right in "Georgia Carpets," Section 1125(a) would have been the right vehicle for that purpose. But what GCS granted to SLS in 1978 was a naked license—what used to be called a "license in gross"—and therein lies the rub.

Among practitioners in this area of law, it is universally recognized that *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir.1959) must be numbered among the seminal decisions. And *Dawn Donut* dealt in part with the concept of "naked licensing" or "licensing in gross" of a trademark, holding that the destruction of the mark (that is, its unenforceability) would follow from such an attempted licensing after the Lanham Act, just as it had under prior law (*id.* at 366–67 (citations omitted)):

> We are all agreed that the Lanham Act places an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his mark by his licensees or suffer cancellation of his federal registration. The Act, 15 U.S.C.A. § 1064, provides that a trademark registration may be cancelled because the trademark has been "abandoned." And "abandoned" is defined in 15 U.S.C.A. § 1127 to include any act or omission by the registrant which causes the trademark to lose its significance as an indication of origin.
>
> Prior to the passage of the Lanham Act many courts took the position that the licensing of a trademark separately from the business in connection with which it

[1]. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

had been used worked an abandonment. The theory of these cases was that:

"A trade-mark is intended to identify the goods of the owner and to safeguard his good will. The designation if employed by a person other than the one whose business it serves to identify would be misleading. Consequently, 'a right to the use of a trade-mark or a trade-name cannot be transferred in gross.'" *American Broadcasting Co. v. Wahl Co., supra,* 121 F.2d [412] at page 413 [(2d Cir.1941)].

Other courts were somewhat more liberal and held that a trademark could be licensed separately from the business in connection with which it had been used provided that the licensor retained control over the quality of the goods produced by the licensee. *E.I. DuPont de Nemours & Co. v. Celanese Corporation of America,* 1948, 167 F.2d 484, 35 CCPA 1061, 3 A.L.R.2d 1213. But even in the *DuPont* case the court was careful to point out that naked licensing, viz. the grant of licenses without the retention of control, was invalid.

The Lanham Act clearly carries forward the view of these latter cases that controlled licensing does not work an abandonment of the licensor's registration, while a system of naked licensing does. 15 U.S.C.A. § 1055 provides:

"Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public."

And 15 U.S.C.A. § 1127 defines "related company" to mean "any person who legitimately controls or is controlled by the registrant or applicant for registration in respect to the nature and quality of the goods or services in connection with which the mark is used."

Without the requirement of control, the right of a trademark owner to license his mark separately from the business in connection with which it has been used would create the danger that products bearing the same trademark might be of diverse qualities. If the licensor is not compelled to take some reasonable steps to prevent misuses of his trademark in the hands of others the public will be deprived of its most effective protection against misleading uses of a trademark. The public is hardly in a position to uncover deceptive uses of a trademark before they occur and will be at best slow to detect them after they happen. Thus, unless the licensor exercises supervision and control over the operations of its licensees the risk that the public will be unwittingly deceived will be increased and this is precisely what the Act is in part designed to prevent. Clearly the only effective way to protect the public where a trademark is used by licensees is to place on the licensor the affirmative duty of policing in a reasonable manner the activities of his licensees.

Those principles, coupled with the identical treatment of trademarks and trade names in that respect (note *Dawn Donut's* quotation from *American Broadcasting* to that effect), also spell the doom of any claim under Section 1125(a) for the asserted infringement of any trade name that has been the subject matter of a naked license. And if no jurisdictional predicate exists for such a claim, then by definition there is no "supplemental jurisdiction" under Section 1367's recent replacement of the pendent jurisdiction concept (for by definition there must be an original-jurisdiction anchor to which the supplemental jurisdiction can attach).

Accordingly GCS's counsel is ordered to file in this Court's chambers on or before March 9, 1992 an explanation of the asserted jurisdictional predicate for its Lanham Act claim. Failing that, or if the explanation does not do the job, this action will have to be dismissed forthwith for lack of subject matter jurisdiction as to Count I and for lack of supplemental jurisdiction as to Count II—though the latter dismissal would obviously be without prejudice to the

reasfertion of that state-law claim in a state court of competent jurisdiction.